# **EXHIBIT 9**

| United States Bankruptcy Court<br>Southern District of New York | PROOF OF CLAIM | |
|---|---|---|
| In re (Name of Debtor)<br>Enron Corp. | Case Number:<br>01-16034 (AJG) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor<br>*(The person or entity to whom the debtor owes money or property)*<br>**Enron Finance Partners, LLC** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and Addresses Where Notices Should be Sent<br><br>Enron Finance Partners, LLC       Kelley Drye & Warren LLP<br>c/o JPMorgan Chase Bank             101 Park Avenue<br>712 Main Street – 24 East             New York, New York 10178<br>Houston, Texas 77002                   Attn: Mark I. Bane<br>Attn: F. Hall Webb | ☐ Ch<br>an<br>th<br>☐ Ch<br>ad<br>th<br><br>Filed: USBC - Southern District of New York<br>ENRON, Et Al.<br>01-16034 (CA)   0000011126<br><br>S SPACE IS FOR<br>JRT USE ONLY |
| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:<br><br>SEE ATTACHMENT | Check here if this claim:  ☐ replaces  a previously filed claim, dated: _____<br>                             ☐ amends |

| 1. BASIS FOR CLAIM:<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other (Describe briefly)  SEE ATTACHMENT | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensations (Fill out below)<br>    Your social security number _____<br>    Unpaid compensations for services performed<br>    From _____ to _____<br>         (date)         (date) |
|---|---|
| 2. DATE DEBT WAS INCURRED:<br>SEE ATTACHMENT | 3. IF COURT JUDGMENT, DATE OBTAINED: |

4. CLASSIFICATION OF CLAIM. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another.
   CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

| ☐ SECURED CLAIM $<br>Attach evidence of perfection of security interest.<br>Brief Description of Collateral:<br>☐ Real Estate   ☐ Motor Vehicle   ☐ Other (Describe briefly)<br>Amount of arrearage and other charges included in secured claim above,<br>if any $<br><br>☒ UNSECURED NONPRIORITY CLAIM   at least $1,339,140,987*<br>*Plus such other amounts as listed on the attachment hereto.<br>   SEE ATTACHMENT<br>A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim. | ☐ UNSECURED PRIORITY CLAIM $_____<br>Specify the priority of the claim.<br>☐ Wages, salaries, or commissions (up to $4,300), earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. § 507(a)(3)<br>☐ Contributions to an employee benefit plan—U.S.C. § 507(a)(4)<br>☐ Up to $1,950 of deposits toward purchase, lease, or rental of property or services of personal, family, or household use—11 U.S.C. § 507(a)(6)<br>☐ Taxes or penalties of governmental units—11 U.S.C. § 507(a)(8)<br>☐ Other—11 U.S.C. §§ 507(a) |
|---|---|

| 5. TOTAL AMOUNT OF<br>   CLAIM AT TIME    at least $1,339,140,987*   _____        _____       at least $1,339,140,987*<br>   CASE FILED:         (Unsecured)              (Secured)       (Priority)            (Total)<br><br>*Plus such other amounts as listed on the attachment hereto. SEE ATTACHMENT<br><br>☐ Check this box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges. | |
|---|---|
| 6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor. | THIS SPACE IS FOR<br>COURT USE ONLY |
| 7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary. | |
| 8. TIME-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |
| Date<br>October 10, 2002 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>F. Hall Webb, authorized agent |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

NY01/PAKA/771261.3

ATTACHMENT TO PROOF OF CLAIM OF
ENRON FINANCE PARTNERS, LLC, AGAINST ENRON CORP.

I. BASIS FOR CLAIM

    A. Background[1]

Pursuant to the Funding Agreement, dated as of November 28, 2000 (the "Zephyrus Funding Agreement"), among Zephyrus Investments, LLC ("Zephyrus"), as Borrower, each of the Lenders signatory thereto (the "Lenders"), as Lenders, each of the certificate purchasers signatory thereto, as Certificate Purchasers, JPMorgan Chase Bank (formerly known as The Chase Manhattan Bank; hereinafter, "JPMCB"), as Administrative Agent, Bank of America, N.A., as Documentation Agent, BNP Paribas, as Syndication Agent, and Fleet National Bank, as Senior Managing Agent, the Lenders loaned to Zephyrus $481,725,000 (the "Zephyrus Loan").

To secure Zephyrus' obligation to the Lenders under the Zephyrus Funding Agreement, and pursuant to the Security Agreement, dated as of November 28, 2000 (the "Zephyrus Security Agreement"), between Zephyrus, as Borrower, and JPMCB, as Collateral Agent (the "Collateral Agent"), Zephyrus granted to JPMCB, for the benefit of the Lenders, a security interest in each of Zephyrus' Class C membership interest in Enron Finance Partners, LLC ("EFP"), any proceeds therefrom, Zephyrus' rights in the LLC Agreement (as defined below), the balance in the Collateral Account (as defined in the Zephyrus Funding Agreement), and all other property of Zephyrus.

Pursuant to the Administration Agreement, dated as of November 28, 2000 (the "Administration Agreement"), between J.P. Morgan Leasing, Inc. (formerly known as Chase Equipment Leasing, Inc.; hereinafter, "JPM Leasing"), as Managing Member of Zephyrus, and

---

[1]     Capitalized terms used but not defined herein shall have the meanings set forth in the relevant referenced documents.

Enron Capital Investments Corp. ("ECIC"), as Administrator, JPM Leasing employed ECIC to provide certain management and administrative services.

Pursuant to the Third Amended and Restated Limited Liability Company Agreement of Enron Finance Partners, LLC, dated as November 28, 2000, as amended (the "LLC Agreement"), among Enron Corp., Enron Finance Management, LLC, Smith Street Land Company, Enron Capital Investments Corp., Enron Global Exploration & Production Inc., Enron Caribbean Basin LLC, Boreas Holdings Corp. and Zephyrus, Zephyrus used the proceeds of the Zephyrus Loan to purchase all of the Class C membership interest in EFP.

The Class A and certain of the Class B membership interests in EFP were acquired pursuant to the following agreements:

(i) the Contribution Agreement, dated as of November 26, 2000 (the "Contribution Agreement), pursuant to which Enron Corp. transferred 11,500,000 shares of common stock of EOG Resources, Inc. to EFP;

(ii) the Contribution Agreement, dated as of December 11, 2000, pursuant to which Boreas Holdings Corp. transferred to EFP certain limited partnership interests in Enron Capital Management III L.P. relating to JEDI II's investments in specified other Enron entities to EFP;

(iii) the Transfer of Share, dated as of July 21, 2000, pursuant to which EOGI-India, Inc. transferred 1,000 shares of Enron Oil & Gas India Ltd. to EFP;

(iv) the Option Agreement, dated as of July 27, 2000 (the "Option Agreement"), pursuant to which Smith Street Land Company ("Smith Street"), granted EFP an option to acquire outstanding shares of Enron Renewable Energy Corp.; and

(v) the Transfer of Share, dated as of October 4, 2000, pursuant to which Enron Caribbean Basin LLC transferred 10,900 shares of Enron LNG Power (Atlantic) Ltd. to EFP.

EFP subsequently transferred the property acquired pursuant to the foregoing agreements to Enron Intermediate Holdings, LLC ("EIH"), of which EFP is the sole member, and EIH transferred such property to Enron Asset Holdings, LLC, in which Enron Corp. and EIH are the members. Pursuant to the Indemnification Agreement, dated as of November 28, 2000 (the "Indemnification Agreement"), between EFP and Enron, Enron agreed to indemnify EFP for any and all losses, costs, liabilities, damages or expenses that may arise in connection with certain of the transactions described herein, including, but not limited to, EFP's acquisition, ownership or disposition of the property described in the preceding paragraph.

Pursuant to the Note Purchase Agreement, dated as of December 22, 2000 (the "Note Purchase Agreement"), between EFP and Sequoia Financial Assets, LLC ("Sequoia"), EFP was to purchase from Sequoia on the first business day of each month, senior secured notes issued by Sequoia to EFP (the "Monthly Notes"). The Monthly Notes are evidenced by the Certificated Note, dated as of December 22, 2000 (the "Certificated Note"), between Sequoia and EFP, pursuant to which Sequoia agreed to pay the principal amounts of the Monthly Notes as set forth therein.

To secure Sequoia's obligations under the Monthly Notes and the Interim Notes (as defined below), and pursuant to the Amended and Restated Security Agreement, dated as of December 22, 2000 (the "EFP Security Agreement"), Sequoia granted to JPMCB, as Collateral Agent, for the benefit of EFP, a security interest in, among other things, Sequoia's rights, claims and benefits under or arising out of the Sale and Servicing Agreements (as described below), the Assets (as defined in the Note Purchase Agreement), and all other accounts and property owned by Sequoia.

Pursuant to the Amended and Restated Sale and Servicing Agreement, dated as of December 22, 2000 (the "Sale and Servicing Agreement"), by and among Enron Corp., as Servicer, certain Enron affiliates, as sellers of Enron Receivables (as defined below), and Sequoia, Sequoia was obligated to use the proceeds of the Monthly Notes and other of Sequoia's notes to purchase certain short-term, ordinary course, trade receivables owed to Enron entities (the "Enron Receivables"). Enron, as Servicer under the Sale and Servicing Agreement, had full control and sole responsibility to execute and administer all transactions required or authorized by the Sale and Servicing Agreement.

Upon collection of an Enron Receivable by Enron, as Servicer, Sequoia was obligated to apply the Enron Receivable proceeds to the amounts due from Sequoia to EFP under the Monthly Notes. EFP was obligated to readvance contemporaneously such proceeds back to Sequoia by purchasing interim notes from Sequoia (the "Interim Notes"). The Interim Notes are also evidenced by the Certificated Note. Sequoia was obligated to use the proceeds of these Interim Notes to purchase short-term promissory notes issued by Enron Corp. and Enron North America Corp. (the "Enron Notes").

Pursuant to the Demand Promissory Note, dated as of November 21, 2000 (the "$125M Promissory Note"), issued by Enron and payable to ECIC, Enron agreed to pay ECIC up to $125,000,000. Pursuant to the Enron Confirmation Letter, dated as of November 28, 2000 (the "Enron Confirmation Letter"), Enron confirmed and represented that the $125M Promissory Note was an obligation of Enron and a Core Permitted Asset described in the LLC Agreement. Pursuant to the Assignment of the Demand Promissory Note, dated as of November 21, 2000 (the "$125M Promissory Note Assignment"), ECIC assigned its interest in and under the $125M Promissory Note to EFP.

Pursuant to the Demand Promissory Note, dated as of November 28, 2000 (the "$500M Promissory Note"), issued by Enron and payable to EFP, Enron agreed to pay EFP up to $500,000,000. Pursuant to the Parent Confirmation Letter, dated as of November 28, 2000 (the "Parent Confirmation Letter"), Enron confirmed and represented that the $500M Promissory Note was an obligation of Enron and a Core Permitted Asset described in the LLC Agreement.

Pursuant to the Promissory Note, dated as of November 1, 2001 (the "$508M Promissory Note"), issued by Enron North America Corp. ("ENA") and payable to EFP, ENA agreed to pay EFP up to $508,000,000 with interest at one-month LIBOR plus 1.25%. Upon information and belief, Enron guaranteed the $508M Promissory Note pursuant to a Confirmation Letter or other document dated on or about November 1, 2001 (the "$508M Note Guaranty").

Pursuant to the Demand Promissory Note, dated as of July 21, 2000 (the "$200M Promissory Note"), issued by Enron and payable to EFP, Enron agreed to pay EFP up to $200,000,000.

B.   Basis for Claim

This proof of claim (the "Proof of Claim") is filed by EFP (the "Claimants") against Enron for debts and obligations of, and claims against, Enron, arising out of, in connection with, or related to (1) any money loaned or transferred to Enron, in connection with or evidenced by, at least, the $125M Promissory Note, the Enron Confirmation Letter, the $500M Promissory Note, the Parent Confirmation Letter, the Contribution Agreement, the $200M Promissory Note, the $508M Note Guaranty, the Indemnification Agreement, the Sale and Servicing Agreement; and (2) any acts or omissions of Enron which may have harmed or caused damage to Claimants in connection with the foregoing documents and any transactions undertaken pursuant, or related, thereto, or otherwise.

## II. TOTAL AMOUNT OF CLAIM

### A. Amount of Claim

On December 2, 2001 (the "Petition Date"), and thereafter, Enron (the "Debtor") and certain of its affiliates (such affiliates together with Enron, the "Debtors") each filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). As of the Petition Date, the Debtor was, and still is, indebted to Claimants in, at least, the following amounts:

(a) $125,000,000 aggregate principal amount of the $125M Promissory Note, plus interest and fees accrued and owing, as of the Petition Date, on the $125M Promissory Note, plus interest and fees accruing thereafter;

(b) $500,000,000 aggregate principal amount of the $500M Promissory Note, plus interest and fees accrued and owing, as of the Petition Date, on the $500M Promissory Note, plus interest and fees accruing thereafter;

(c) any and all amounts due and owing under the Contribution Agreement and the LLC Agreement;

(d) $200,000,000 principal amount of the $200M Promissory Note, plus interest and fees accrued and owing, as of the Petition Date, on the $200M Promissory Note, plus interest and fees accruing thereafter;

(e) pursuant to the $508M Note Guaranty, $508,000,000 principal amount of the $508M Promissory Note, plus interest and fees accrued and owing, as of the Petition Date, on the $508M Promissory Note, plus interest and fees accruing thereafter;

(f) any and all amounts due and owing under the Indemnification Agreement;

   (g) at least $6,140,987 due pursuant to the Sale and Servicing Agreement for Enron's failure to collect assets on November 30, 2001 and Enron's obligation to indemnify the Collateral Agent or EFP for losses arising from Enron's negligence, willful misfeasance, bad faith, or reckless disregard of its obligations and duties, as Servicer;

   (h) any and all amounts due on account of damages suffered by claimants due to Enron's negligence, willful misfeasance, bad faith or reckless disregard of its obligations and duties as Servicer under the Sale and Servicing Agreement. In addition, claimants may have additional claims against Enron that have yet to be identified due to Enron's control, as Servicer, of all transactions undertaken pursuant to, or in connection with, the Sale and Servicing Agreement; and

   (i) any and all additional amounts owed by Debtor to Claimants under or in connection with the foregoing documents, and any related documents, including, without limitation, amounts owed in respect of claims arising both prior to the Petition Date and subsequent to the Petition Date that remain outstanding in an undetermined amount or are otherwise unliquidated and/or contingent as of the date hereof. These claims include, without limitation, misrepresentations and/or breaches of covenants and defaults under the foregoing agreements, claims for expenses, fees (including attorneys' fees), indemnities and termination costs of, or damages relating to, the foregoing documents, whether arising prior to or subsequent to the Petition Date.

 B. <u>Other Claims</u>

  This Proof of Claim also expressly includes all rights to assert a constructive trust against assets or cash held by the Debtor, and also includes any and all amounts owed, for damages or otherwise, on account of any and all claims that Claimants have or may have, whether known or

unknown, against the Debtor, the other Debtors, and all those purporting to act on their behalf, whether presently asserted or to be asserted, including, without limitation, claims for or based upon (1) common law fraud, (2) misrepresentation, (3) subrogation, (4) indemnity, (5) contribution, (6) unjust enrichment, (7) constructive trust, (8) fraudulent conveyance, (9) failure to fulfill contractual and fiduciary obligations, (10) breach of implied covenants of good faith and fair dealing, (11) negligent undertaking, (12) making, causing or permitting to be made misleading statements regarding the businesses of Debtor and the Debtors, (13) failure to take prudent and appropriate action regarding adverse business conditions affecting the business operations of the Debtor and the Debtors, (14) failure to require adequate financial and accounting controls for the Debtor and the Debtors, all of which, singularly or collectively, may have caused Claimants to suffer damages.

### III. RESERVATION OF RIGHTS

Claimants do not waive, and expressly reserve, all of the rights and remedies at law and in equity that Claimants have or may have against the Debtor, the other Debtors, and/or any of Debtor's affiliates and subsidiaries, or any other person or entity.

By filing this Proof of Claim, Claimants do not submit to the jurisdiction of this Court for any purpose other than with respect to the Proof of Claim. This Proof of Claim is not intended to be, and shall not be construed as (1) an election of remedies, (2) a waiver of any defaults, or (3) a waiver or limitation of any rights, remedies, claims or interests of any of the Claimants.

Claimants reserve the right to amend or supplement this Proof of Claim at any time and, in any respect, including but not limited to, for purposes of fixing, increasing or amending in any respect the amounts referred to herein, asserting secured status, administrative claim status or super-priority administrative claim status for all or any portion of the amounts claimed herein,

and adding or amending documents and other information and further describing the Proof of Claim. The information regarding certain amounts claimed herein may have been provided to Claimants by the Debtors and such amounts remain subject to further verification. Claimants do not waive any right to amounts due for any claim asserted herein by not stating a specific amount due for any such claim at this time, and Claimants reserve the right to amend or supplement this Proof of Claim, if Claimants should deem it necessary and appropriate, to assert and state an amount for any such claim.

This Proof of Claim is made without prejudice to any of the Claimants' rights under the Bankruptcy Code or otherwise, including, but not limited to, any and all rights of setoff and recoupment, and the right to vote on any chapter 11 plan for any of the Debtors in these bankruptcy cases. Furthermore, Claimants expressly preserve all of their rights and claims against each of the Debtors and their respective creditors under the Bankruptcy Code.

This Proof of Claim is in addition to any other request for payment or proofs of claim filed or to be filed by any of the Claimants, and shall in no way prejudice the rights of any of the Claimants to file any other request for payment or proofs of claim, including claims for the same, or additional, amounts as claimed herein. Claimants expressly reserve the right to supplement any claims against the Debtor and each of the Debtors, including the right to identify additional Debtors against whom Claimants may have claims, after full disclosure of all relevant facts in these bankruptcy cases.

IV.    SUPPORTING DOCUMENTS

Due to the voluminous nature of the documents supporting the claims asserted herein, Claimants have not attached copies hereto. Copies of all documents referenced herein may be in the Debtors' possession and are also available upon request to counsel to Claimants.