# **EXHIBIT 12**

| United States Bankruptcy Court<br>Southern District of New York | PROOF OF CLAIM | |
|---|---|---|
| In re (Name of Debtor)<br>**Enron Corp.** | Case Number:<br>**01-16034 (AJG)** | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor<br>*(The person or entity to whom the debtor owes money or property)*<br>**Cherokee Finance V.O.F.** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and Addresses Where Notices Should be Sent<br><br>**Cherokee Finance V.O.F.**         **Kelley Drye & Warren LLP**<br>c/o JPMorgan Chase Bank            101 Park Avenue<br>712 Main Street – 24 East              New York, New York 10178<br>Houston, Texas 77002                    Attn: Mark I. Bane<br>Attn: F. Hall Webb | Filed: USBC - Southern District of New York<br>ENRON, Et Al.<br>01-16034 (CA )    0000011132<br><br>[barcode] | THIS SPACE IS FOR COURT USE ONLY |
| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:<br><br>**SEE ATTACHMENT** | Check here if this claim:  ☐ replaces   a previously filed claim, dated: _____<br>                                        ☐ amends | |

| 1. BASIS FOR CLAIM:<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other (Describe briefly)  **SEE ATTACHMENT** | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensations (Fill out below)<br>  Your social security number _____<br>  Unpaid compensations for services performed<br>  From _____ to _____<br>           (date)           (date) |
|---|---|
| 2. DATE DEBT WAS INCURRED:<br>**SEE ATTACHMENT** | 3. IF COURT JUDGMENT, DATE OBTAINED: |

4. CLASSIFICATION OF CLAIM. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another.
CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

☐ SECURED CLAIM $_____
  Attach evidence of perfection of security interest.
  Brief Description of Collateral:
  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other (Describe briefly)
  Amount of arrearage and other charges included in secured claim above, if any $_____

☒ UNSECURED NONPRIORITY CLAIM at least **$1,480,726,659***

  *Plus such other amounts as listed on the attachment hereto.
   SEE ATTACHMENT

A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM $_____
  Specify the priority of the claim.
  ☐ Wages, salaries, or commissions (up to $4,300), earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. § 507(a)(3)
  ☐ Contributions to an employee benefit plan—U.S.C. § 507(a)(4)
  ☐ Up to $1,950 of deposits toward purchase, lease, or rental of property or services of personal, family, or household use—11 U.S.C. § 507(a)(6)
  ☐ Taxes or penalties of governmental units—11 U.S.C. § 507(a)(8)
  ☐ Other—11 U.S.C. §§ 507(a)

| 5. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED: | at least **$1,480,726,659***<br>(Unsecured) | _____<br>(Secured) | _____<br>(Priority) | at least **$1,480,726,659***<br>(Total) |
|---|---|---|---|---|

*Plus such other amounts as listed on the attachment hereto. SEE ATTACHMENT

☐ Check this box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

| 6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. TIME-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>October **10**, 2002 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>[signature]        **F. Hall Webb, authorized agent** |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

NY01/PAKA/768876.6

ATTACHMENT TO PROOF OF CLAIM OF
CHEROKEE FINANCE V.O.F.
AGAINST ENRON CORP.

I. BASIS FOR CLAIM

A. Background[1]

Pursuant to the Credit Agreement, dated as of May 28, 1999 (the "Choctaw Credit Agreement"), among Choctaw Investors B.V. ("Choctaw"), as Borrower, the Lenders party thereto (the "Lenders"), as Lenders, JPMorgan Chase Bank (successor by merger to Chase Bank of Texas, National Association; hereinafter, "JPMCB"), as Administrative Agent, and JPMorgan Securities Inc. (successor to Chase Securities Inc.), as Lead Arranger and Book Manager, the Lenders extended a $485,000,000 term loan to Choctaw (the "Choctaw Loan").

To secure Choctaw's obligation to the Lenders under the Choctaw Credit Agreement and pursuant to the Security Agreement, dated as of May 29, 1999 (the "Choctaw Security Agreement"), between Choctaw, as Borrower, and JPMCB, as Collateral Agent (the "Collateral Agent"), Choctaw granted to the Collateral Agent for the benefit of the Lenders, a security interest in, among other things, Choctaw's Preferred Units in Cherokee Finance V.O.F. ("Cherokee"), any proceeds therefrom, Choctaw's rights under the Partnership Agreement (as defined below), the balance in the Collateral Account (as defined in the Choctaw Security Agreement) and all other property owned by Choctaw.

Pursuant to the Cherokee General Partnership Agreement, dated as of May 28, 1999 (the "Cherokee Partnership Agreement"), between Cheyenne Finance S.A.R.L. ("Cheyenne"), as Initial Common General Partner of Cherokee, and Choctaw, as Initial Preferred Partner of

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the relevant referenced documents.

Cherokee, Choctaw used the proceeds of the Choctaw Loan to purchase all of the Preferred Units in Cherokee.

In connection with the Cherokee Partnership Agreement, Enron Corp. ("Enron") executed an Indemnity Letter, dated as of May 28, 1999 (the "Indemnity Letter"), pursuant to which Enron agreed to indemnify Choctaw for (a) any losses, claims, damages or liabilities arising out of (i) any misrepresentation by Enron under the Indemnity Letter or (ii) the failure by Enron to perform any of its obligations under the Indemnity Letter or (b) any liabilities incurred by Cherokee or by Choctaw, in its capacity as a partner of Cherokee, by reason of any decision made by the Board of Directors of Cherokee in contravention of specified provisions in the Partnership Agreement. Choctaw's rights under the Indemnity Letter are subject to the Collateral Agent's security interest under the Choctaw Security Agreement.

Pursuant to the Note Purchase Agreement, dated as of May 28, 1999, and the Amended and Restated Note Purchase Agreement, dated as of December 22, 2000 (collectively, the "Note Purchase Agreement"), Cherokee was to purchase from Sequoia Financial Assets, LLC ("Sequoia"), on the first business day of each month, senior secured notes issued by Sequoia to Cherokee (the "Monthly Notes"). The Monthly Notes are evidenced by the Certificated Note, dated as of May 28, 1999 (the "Certificated Note"), between Sequoia and Cherokee, pursuant to which Sequoia promised to pay the principal amounts on the Monthly Notes on the Maturity Date, as defined therein.

To secure Sequoia's obligations to Cherokee under the Monthly Notes and the Interim Notes (as defined below), and pursuant to the Amended and Restated Security Agreement, dated as of December 22, 2000 (the "Cherokee Security Agreement"), Sequoia granted to JPMCB, as Collateral Agent, for the benefit of Cherokee, a security interest in, among other things, the

rights, claims and benefits of Sequoia arising out of the Sale and Servicing Agreement (as described below), the Assets (as defined in the Note Purchase Agreement), and all other accounts and property owned by Sequoia.

Pursuant to the initial Sale and Servicing Agreement, dated as of May 28, 1999 and the Amended and Restated Sale and Servicing Agreement, dated as of December 22, 2000 (collectively, the "Sale and Servicing Agreement"), by and among Enron, as Servicer, certain Enron affiliates, as sellers of Enron Receivables (as defined below), and Sequoia, Sequoia was obligated to use the proceeds from Sequoia's sale of the Monthly Notes and other of its notes to purchase certain short-term, ordinary course, trade receivables owed to Enron entities (the "Enron Receivables"). Enron, as Servicer under the Sale and Servicing Agreement, had full control and sole responsibility to execute and administer all transactions required or authorized by the Sale and Servicing Agreement.

Upon collection of an Enron Receivable by Enron, as Servicer, Sequoia was obligated to apply the Enron Receivable proceeds to the amounts due from Sequoia to Cherokee under the Monthly Notes. Cherokee was obligated to readvance contemporaneously such proceeds back to Sequoia by purchasing interim notes from Sequoia (the "Interim Notes"). The Interim Notes are also evidenced by the Certificated Note.

Sequoia was obligated to use the proceeds of these Interim Notes to purchase short-term promissory notes issued by Enron Corp. and Enron North America Corp. (the "Enron Notes"). The Enron Notes are evidenced by the Note, dated as of May 28, 1999, issued by Enron and the Note, dated as of May 28, 1999, issued by Enron North America Corp. ("ENA").

Pursuant to the Promissory Note, dated as of May 1999, (the "Enron Promissory Note"), Enron agreed to pay Cherokee on the maturity date up to $20,000,000, plus interest.

Pursuant to the Promissory Note, dated as of May 28, 1999 (the "ENH Promissory Note"), Enron Netherlands Holding B.V. ("ENH") agreed to pay Cherokee on the maturity date up to $20,000,000, plus interest. Pursuant to the Parent Confirmation Letter, dated as of May 1999 (the "ENH Confirmation Letter"), between Enron and Cherokee, Enron guaranteed the payment of the ENH Promissory Note.

Pursuant to the Promissory Note, dated as of November 1, 2001 (the "ENA Promissory Note"), ENA agreed to pay Cherokee, on the maturity date, up to $820,000,000, plus interest. Pursuant to the Parent Confirmation Letter, dated as of November 1, 2001 (the "ENA/Enron Confirmation Letter"), between Enron and Cherokee, Enron guaranteed the payment of the ENA Promissory Note.

B.  Basis for Claim

This proof of claim (the "Proof of Claim") is filed by Cherokee (hereinafter, the "Claimants"), for debts and obligations of, and claims against Enron arising out of, and in connection with or related to (1) money loaned or transferred to Enron, in connection with or evidenced by, at least, the Enron Promissory Note, the ENH Promissory Note and Confirmation Letter, the ENA Promissory Note and Confirmation Letter, and the Sale and Servicing Agreement pursuant to which Enron is obligated to indemnify Cherokee from and against any and all costs, expenses, losses, claims, damages and liabilities to the extent that any such cost, expense, loss, claim, damage or liability arose out of the negligence, willful misfeasance or bad faith of Enron, as Servicer, in the performance of its duties under the Sale and Servicing Agreement, or by reason of reckless disregard of Enron's obligations and duties under the Sale and Servicing Agreement and any related documents, and (2) any acts or omissions of Enron

which may have harmed or caused damage to the Claimants, in connection with the foregoing documents and any transactions undertaken pursuant thereto, or otherwise.

II.     TOTAL AMOUNT OF CLAIM

   A.     Amount of Claim

On December 2, 2001 (the "Petition Date"), and thereafter, Enron (the "Debtor") and certain of its affiliates (such affiliates together with Enron, the "Debtors") each filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). As of the Petition Date, Debtor was, and still is, indebted to Claimants in, at least, the following amounts:

   (a)     $20,000,000 aggregate principal amount of the Enron Promissory Note, plus interest and fees accrued and owing as of the Petition Date, under the Enron Promissory Note, plus interest and fees accruing thereafter;

   (b)     Pursuant to the ENH Confirmation Letter, $20,000,000 aggregate principal amount of the ENH Promissory Note, plus interest and fees accrued and owing, as of the Petition Date, under the ENH Promissory Note, plus interest and fees accruing thereafter;

   (c)     Pursuant to the ENA/Enron Confirmation Letter, $820,000,000 aggregate principal amount of the ENA Promissory Note, plus interest and fees accrued and owing, as of the Petition Date, under the ENA Promissory Note, plus interest and fees accruing thereafter;

   (d)     any and all amounts due and owing under the Sale and Servicing Agreement;

   (e)     at least $620,726,659 due pursuant to the Sale and Servicing Agreement for Enron's failure to collect assets on November 30, 2001 and Enron's obligation to indemnify the

Cherokee for losses arising from Enron's negligence, willful misfeasance, bad faith, or reckless disregard of its obligations and duties, as Servicer; and

(f) any and all amounts due on account of damages suffered by Claimants due to Enron's negligence, willful misfeasance, bad faith or reckless disregard of its obligations and duties as Servicer under the Sale and Servicing Agreement. In addition, Claimants may have additional claims against Enron that have yet to be identified due to Enron's control, as Servicer, of all transactions undertaken pursuant to, or in connection with, the Sale and Servicing Agreement; and

(g) any and all additional amounts owed by Debtor to Claimants under or in connection with the documents referenced in Section I.B. herein, and any related documents, including, without limitation, amounts owed in respect of claims arising both prior to the Petition Date, and subsequent to the Petition Date, that remain outstanding in an undetermined amount or are otherwise unliquidated and/or contingent as of the date hereof. These claims include, without limitation, misrepresentations and/or breaches of covenants and defaults under the documents referenced in Section I.B. herein, claims for expenses, fees (including attorneys' fees), indemnities and termination costs of, or damages relating to, the documents referenced in Section I.B. herein, whether arising prior to or subsequent to the Petition Date.

B. <u>Other Claims</u>

This Proof of Claim also expressly includes all rights to assert a constructive trust against assets or cash held by the Debtor, and also includes any and all amounts owed, for damages or otherwise, on account of any and all claims that Claimants have or may have, whether known or unknown, against the Debtor, the other Debtors, and all those purporting to act on their behalf, whether presently asserted or to be asserted, including, without limitation, claims for or based

upon (1) common law fraud, (2) misrepresentation, (3) subrogation, (4) indemnity, (5) contribution, (6) unjust enrichment, (7) constructive trust, (8) fraudulent conveyance, (9) failure to fulfill contractual and fiduciary obligations, (10) breach of implied covenants of good faith and fair dealing, (11) negligent undertaking, (12) making, causing or permitting to be made misleading statements regarding the businesses of Debtor and the Debtors, (13) failure to take prudent and appropriate action regarding adverse business conditions affecting the business operations of the Debtor and the Debtors, (14) failure to require adequate financial and accounting controls for the Debtor and the Debtors, all of which, singularly or collectively, may have caused Claimants to suffer damages.

III.   RESERVATION OF RIGHTS

Claimants do not waive, and expressly reserve, all of the rights and remedies at law and in equity that Claimants have or may have against the Debtor, the other Debtors, and/or any of Debtor's affiliates and subsidiaries, or any other person or entity.

By filing this Proof of Claim, Claimants do not submit to the jurisdiction of this Court for any purpose other than with respect to the Proof of Claim. This Proof of Claim is not intended to be, and shall not be construed as (1) an election of remedies, (2) a waiver of any defaults, or (3) a waiver or limitation of any rights, remedies, claims or interests of Claimants.

Claimants reserve the right to amend or supplement this Proof of Claim at any time and, in any respect, including but not limited to, for purposes of fixing, increasing or amending in any respect the amounts referred to herein, asserting secured status, administrative claim status or super-priority administrative claim status for all or any portion of the amounts claimed herein, and adding or amending documents and other information and further describing the Proof of Claim. The information regarding certain amounts claimed herein may have been provided to

Claimants by the Debtors and such amounts remain subject to further verification. Claimants do not waive any right to amounts due for any claim asserted herein by not stating a specific amount due for any such claim at this time, and Claimants reserve the right to amend or supplement this Proof of Claim, if Claimants should deem it necessary and appropriate, to assert and state an amount for any such claim.

This Proof of Claim is made without prejudice to Claimants' rights under the Bankruptcy Code or otherwise, including, but not limited to, any and all rights of setoff and recoupment, and the right to vote on any chapter 11 plan for any of the Debtors in these bankruptcy cases. Furthermore, Claimants expressly preserve all rights and claims against each of the Debtors and their respective creditors under the Bankruptcy Code.

This Proof of Claim is in addition to any other request for payment or proofs of claim filed or to be filed by Claimants, and shall in no way prejudice the rights of Claimants to file any other request for payment or proofs of claim, including claims for the same, or additional, amounts as claimed herein. Claimants expressly reserve the right to supplement any claims against the Debtor and each of the Debtors, including the right to identify additional Debtors against whom Claimants may have claims, after full disclosure of all relevant facts in these bankruptcy cases.

## IV. SUPPORTING DOCUMENTS

Due to the voluminous nature of the documents supporting the claims asserted herein, Claimants have not attached copies hereto. Copies of all documents referenced herein may be in the Debtors' possession and are also available upon request to counsel to Claimants.