# EXHIBIT 15

# REDEMPTION AGREEMENT

This REDEMPTION AGREEMENT, dated as of May 10, 2004 (this "Agreement"), is by and among ENRON FINANCE PARTNERS, LLC, a Delaware limited liability company ("EFP"), ENRON CORP., an Oregon corporation ("ENE"), ENRON FINANCE MANAGEMENT, LLC, a Delaware limited liability company ("EFM"), SMITH STREET LAND COMPANY, a Delaware corporation ("SSLC"), ENRON CAPITAL INVESTMENTS CORP., a Delaware corporation ("ECIC"), ENRON GLOBAL EXPLORATION & PRODUCTION, INC., a Delaware corporation ("EGEPI"), ENRON CARIBBEAN BASIN LLC, a Delaware limited liability company ("ECB"), BOREAS HOLDINGS CORP., a Delaware corporation ("Boreas," and collectively with, ENE, EFM, SSLC, ECIC, EGEPI and ECB, the "Enron Parties"), ZEPHYRUS INVESTMENTS, LLC, a Delaware limited liability company ("Zephyrus") and JPMORGAN CHASE BANK (f/k/a The Chase Manhattan Bank), a New York State chartered bank, as a Zephyrus Lender,[1] and as Administrative Agent and Collateral Agent for the Zephyrus Lenders (in all such capacities "JPMC," unless otherwise identified by a specific capacity herein, and collectively with EFP, the Enron Parties and Zephyrus, the "Parties").

WHEREAS, the Enron Parties and Zephyrus are parties to that certain Third Amended and Restated Limited Liability Company Agreement of Enron Finance Partners, LLC, dated as of January 2, 2001, as amended from time to time (the "LLC Agreement"), regarding the formation and operation of EFP pursuant to the provisions of Chapter 18, Title 6 of the Delaware Code, as amended from time to time (the "Act");

WHEREAS, EFP has three (3) classes of membership interests, i.e., Class A, Class B and Class C, which are held as follows: (a) EFM holds all of the Class A membership interests of EFP; (b) SSLC, EGEPI, Boreas, ECB and ECIC hold all of the Class B membership interests of EFP; and (c) Zephyrus holds all of the Class C membership interests of EFP (the "EFP Preferred Interests");

WHEREAS, JPMC, as Collateral Agent for the Zephyrus Lenders, has asserted certain rights to enforce and realize upon, and to exercise the rights of Zephyrus with respect to, the EFP Preferred Interests as Collateral Agent under the Funding Agreement (as defined below);

WHEREAS, certain of the Parties are party to that certain Settlement Agreement, dated as of May 5, 2004, by and among ENE, Enron North America Corp., Enron Power Marketing, Inc., Sequoia Financial Assets, LLC ("Sequoia"), Cheyenne Finance S.a.r.l. ("Cheyenne"), Cherokee Finance V.O.F. i.l. ("Cherokee"), EFP, and JPMC (as: (a) Administrative Agent and Collateral Agent pursuant to that certain (i) Credit Agreement, dated as of May 28, 1999, by and among Choctaw Investors B.V., the lenders party thereto, JPMC and JPMorgan Securities, Inc. ("JPMS"), as successor to Chase Securities, Inc., and (ii) Funding Agreement, dated as of November 28, 2000 (the

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Settlement Agreement (as defined below).

"Funding Agreement"), by and among Zephyrus, the lenders party thereto (collectively, the "Zephyrus Lenders"), JPMC, Bank of America, N.A., BNP Paribas and Fleet National Bank, as co-agents, and JPMS; (b) Collateral Agent pursuant to that certain Amended and Restated Security Agreement, dated as of December 22, 2000 (the "Security Agreement"), by and among Sequoia, Cherokee, EFP and JPMC, as Collateral Agent; and (c) attorney-in-fact for Sequoia pursuant to the Security Agreement), and certain lenders party thereto (the "Settlement Agreement"), settling certain outstanding issues among the parties thereto, upon the terms and conditions set forth therein;

WHEREAS, Zephyrus has indicated that it intends, after the date hereof, to exercise certain rights under the Funding Agreement to transfer the EFP Preferred Interests and its other assets to JPMC as Collateral Agent for the Zephyrus Lenders (the "Zephyrus Transfer");

WHEREAS, in connection with the Settlement Agreement, EFP has determined, in its business judgment, that it is in the best interests of EFP to enter into this Agreement and redeem the EFP Preferred Interests in accordance with the terms hereof; and

WHEREAS, each of the other Parties has determined, in its own business judgment, that it is in its best interests to enter into this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is mutually agreed as follows:

SECTION 1.    Redemption and Cancellation of the EFP Preferred Interests.

1.1.    Redemption.  Subject to the terms and conditions set forth in this Agreement, on the Redemption Date (as defined below), Zephyrus or, if the Zephyrus Transfer shall have been completed, JPMC, as Collateral Agent for the Zephyrus Lenders, shall sell, assign, transfer and convey to EFP, and EFP shall purchase, acquire and redeem from Zephyrus, or if the Zephyrus Transfer has been completed, JPMC, as Collateral Agent for the Zephyrus Lenders, all right, title and interest of Zephyrus and JPMC, as Collateral Agent for the Zephyrus Lenders, in and to the EFP Preferred Interests, and in consideration thereof, EFP shall simultaneously assign to JPMC, as Collateral Agent for the Zephyrus Lenders, the following claims and all rights with respect thereto pursuant to the Plan[2] (collectively, the "Redemption Amount"): (a) Claim No. 11125, solely to the extent of Eighteen Million Dollars ($18,000,000.00); (b) Claim No. 11126 in the amount of Four Hundred Fifteen Million Five Hundred Thousand

---

[2] "Plan" is defined herein as that certain Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, including without limitation, the Plan Supplement and the exhibits and schedules thereto, as the same is amended, modified or supplemented from time to time in accordance with the terms and provisions thereof, filed in the cases commenced by ENE and certain of its affiliates under chapter 11 of title 11 of the United States Code, as amended from time to time, commencing on December 2, 2001, and styled In re Enron Corp., et al., Chapter 11 Case No. 01-16034 (AJG), Jointly Administered (the "Enron Cases").

Dollars ($415,500,000.00), bifurcated into a Class 4 Claim against ENE under the Plan in the amount of One Hundred Thirty-Five Million Dollars ($135,000,000.00) and an Allowed ENE Guaranty Claim, Class 185 under the Plan, in the amount of Two Hundred Eighty Million Five Hundred Thousand Dollars ($280,500,000.00); and (c) Claim No. 11127, as a Class 5 Claim against ENA in the amount of Five Hundred Ten Million Dollars ($510,000,000.00) (collectively, the "EFP Allowed Claims"). In full and complete satisfaction of any and all claims arising from or relating to the EFP Preferred Interests, the LLC Agreement or the Zephyrus Funding, each of the Zephyrus Lenders shall be entitled to receive from JPMC, as Collateral Agent for the Zephyrus Lenders, to the extent received by JPMC, as Collateral Agent for the Zephyrus Lenders, under the Plan, such Zephyrus Lender's *pro rata* share of distributions pursuant to the Plan on account of the EFP Allowed Claims; provided, that as a condition to receiving any such distribution, each Zephyrus Lender shall be required to deliver to JPMC, with a copy to EFP (and upon the dissolution of EFP, to ENE), a certification affirming that it does not hold Recovery Action Indebtedness; and provided, further, that to the extent that any such Zephyrus Lender holds Recovery Action Indebtedness: (y) such Zephyrus Lender's *pro rata* share of distributions on account of EFP Allowed Claims corresponding to such Recovery Action Indebtedness which otherwise would be made to such Zephyrus Lender in accordance with this Section 1.1 shall be placed into the Disputed Claims Reserve in accordance with the terms and conditions of Section 21.3 of the Plan; and (z) the holder of such Recovery Action Indebtedness shall receive no distributions on account of the EFP Allowed Claims corresponding to such Recovery Action Indebtedness until the earliest to occur of (i) entry of a final order or final judgment in the Recovery Action dismissing the claims and causes of action asserted against such Recovery Action Defendant, in which case, any distributions so reserved shall be released to JPMC, as Collateral Agent for the Zephyrus Lenders, for distribution to the holder of such Recovery Action Indebtedness, (ii) entry of a final order or final judgment granting the relief requested in the Recovery Action, in which case, any distributions so reserved shall be released to ENE or, in the event that the Litigation Trust has been created and Litigation Trust Claims are assigned thereto, to the Litigation Trust, as the case may be, and (iii) entry of a final order of the Bankruptcy Court compromising and settling the claims and causes of action asserted against such Recovery Action Defendant in the Recovery Action, in which case, any distributions so reserved shall be released to the party entitled thereto in connection with such compromise and settlement. Any distributions received by JPMC as Collateral Agent for a Zephyrus Lender on account of EFP Allowed Claims shall not be considered to correspond to Recovery Action Indebtedness to the extent that the Zephyrus Lender on behalf of which such distribution is received does not hold Recovery Action Indebtedness, notwithstanding that JPMC is named as a Recovery Action Defendant. EFP and the Enron Parties acknowledge that, after the Redemption Date but prior to the date that distributions on account of EFP Allowed Claims are made under the Plan, JPMC, as Collateral Agent for the Zephyrus Lenders, may distribute to each Zephyrus Lender its *pro rata* share of the EFP Allowed Claims. The distribution of the EFP Allowed Claims shall not: (aa) affect the limitations set forth above with respect to distributions corresponding to Recovery Action Indebtedness; or (bb) limit the rights of the Enron Releasors (as defined in the Settlement Agreement) or any other party-in-interest in accordance with section 502(d) of the

Bankruptcy Code to the extent that the holder of the Zephyrus Funding holds Recovery Action Indebtedness.

       1.2.   Cancellation of the EFP Preferred Interests. Immediately upon payment of the Redemption Amount and without the need for the execution and delivery of additional documentation, the EFP Preferred Interests shall be deemed cancelled and all rights and obligations with respect thereto, and arising in connection therewith, shall terminate, including but not limited to such rights and obligations arising pursuant to the LLC Agreement.

       SECTION 2.   Consent and Waiver With Respect to Certain Terms of the LLC Agreement. The Parties expressly consent to the redemption contemplated by this Agreement, and expressly waive any requirement or restriction with respect thereto set forth in the LCC Agreement, including but not limited to, pursuant to Sections 2.04(b), 3.03, 3.07, 7.01 and 12.02 thereof.

       SECTION 3.   Redemption Date. The Redemption Date shall occur on the day on which all of the conditions precedent set forth in Sections 15, 16 and 17 hereof are satisfied.

       SECTION 4.   Representations and Warranties of Zephyrus. Zephyrus hereby represents and warrants:

       4.1.   Organization and Good Standing. Zephyrus is a Delaware limited liability company duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

       4.2.   Authority; Due Execution; Validity of Agreement. Zephyrus has full power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby. The execution, delivery and performance by Zephyrus of this Agreement have been authorized by all necessary limited liability company action on behalf of Zephyrus. This Agreement has been duly and validly authorized, executed and delivered by Zephyrus and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of Zephyrus, enforceable against Zephyrus in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

       4.3.   No Conflict. Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall: (a) conflict with or violate any provision of Zephyrus' organizational documents; (b) accelerate, or give to others, any interests or rights to the EFP Preferred Interests; (c) result in the creation of any mortgage, pledge, assessment, security interest, lien, claim, charge, conditional sales contract, adverse

claim, restriction, reservation, option, right of first refusal, other encumbrance of any nature whatsoever or other contract to give any of the foregoing (collectively, "Encumbrances") on the EFP Preferred Interests; (d) conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule judgment, order, decree, injunction, ruling or regulation of any government, governmental agency, authority or instrumentality, court or arbitration tribunal (each a "Governmental Entity") to which Zephyrus is subject; or (e) require Zephyrus to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

4.4.    Title to EFP Preferred Interests.  As of the date of this Agreement, Zephyrus has legal and beneficial ownership of the EFP Preferred Interests, free and clear of all Encumbrances other than the security interest of JPMC as Collateral Agent for the Zephyrus Lenders.  Upon conveyance of the EFP Preferred Interests by Zephyrus to EFP in accordance with this Agreement, EFP shall have, legal and beneficial ownership of the EFP Preferred Interests, free and clear of all Encumbrances.

4.5.    Broker's Fees.  No agent, broker, investment banker or other person or firm acting on behalf of Zephyrus is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 5.    Representations and Warranties of JPMC.  JPMC hereby represents and warrants:

5.1.    Organization and Good Standing.  JPMC is a New York State chartered bank duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

5.2.    Authority; Due Execution; Validity of Agreement.  JPMC has full corporate power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby on behalf of itself and the Zephyrus Lenders.  The execution, delivery and performance by JPMC of this Agreement have been authorized by all necessary action on behalf of JPMC and the Zephyrus Lenders.  This Agreement has been duly and validly authorized, executed and delivered by JPMC and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of JPMC, enforceable against JPMC and the Zephyrus Lenders in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

5.3.    No Conflict.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor

compliance with the terms hereof, shall: (a) conflict with or violate any provision of JPMC's organizational documents; (b) accelerate, or give to others, any interests or rights to the EFP Preferred Interests; (c) result in the creation of any Encumbrance on the EFP Preferred Interests; (d) conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which JPMC is subject; or (e) require JPMC to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

5.4.    Title to EFP Preferred Interests.  After the Zephyrus Transfer has been completed, JPMC shall have, and upon conveyance of the EFP Preferred Interests by JPMC to EFP in accordance with this Agreement EFP shall have, legal and beneficial ownership of the EFP Preferred Interests, free and clear of all Encumbrances.

5.5.    Broker's Fees.  No agent, broker, investment banker or other person or firm acting on behalf of JPMC is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 6.    Representations and Warranties of EFP.  EFP hereby represents and warrants:

6.1.    Organization and Good Standing.  EFP is a Delaware limited liability company duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

6.2.    Authority; Due Execution; Validity of Agreement.  EFP has full power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby.  The execution, delivery and performance by EFP of this Agreement have been authorized by all necessary limited liability company action on behalf of EFP.  This Agreement has been duly and validly authorized, executed and delivered by EFP and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of EFP, enforceable against EFP in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

6.3.    No Conflict.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall:  (a) conflict with or violate any provision of EFP's organizational documents; (b) conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule, judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which EFP is subject; or (c) require

EFP to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

6.4.    Broker's Fees.  No agent, broker, investment banker or other person or firm acting on behalf of EFP is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 7.    Representations and Warranties of ENE.  ENE hereby represents and warrants:

7.1.    Organization and Good Standing.  ENE is an Oregon corporation duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

7.2.    Authority; Due Execution; Validity of Agreement.  Subject to the entry of the Approval Order (as defined below): (a) ENE has full corporate power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby; (b) the execution, delivery and performance by ENE of this Agreement have been authorized by all necessary corporate action on behalf of ENE; and (c) this Agreement has been duly and validly authorized, executed and delivered by ENE and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of ENE, enforceable against ENE in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

7.3.    No Conflict.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall:  (a) conflict with or violate any provision of ENE's organization documents; (b) upon entry of the Approval Order, conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule, judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which ENE is subject; or (c) except with respect to entry of the Approval Order, require ENE to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

7.4.    Broker's Fees.  No agent, broker, investment banker or other person or firm acting on behalf of ENE is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 8. <u>Representations and Warranties of EFM</u>. EFM hereby represents and warrants:

8.1. <u>Organization and Good Standing</u>. EFM is a Delaware limited liability company duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

8.2. <u>Authority; Due Execution; Validity of Agreement</u>. EFM has full power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby. The execution, delivery and performance by EFM of this Agreement have been authorized by all necessary limited liability company action on behalf of EFM. This Agreement has been duly and validly authorized, executed and delivered by EFM and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of EFM, enforceable against EFM in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

8.3. <u>No Conflict</u>. Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall:  (a) conflict with or violate any provision of EFM's organization documents; (b) conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule, judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which EFM is subject; or (c) require EFM to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

8.4. <u>Broker's Fees</u>. No agent, broker, investment banker or other person or firm acting on behalf of EFM is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 9. <u>Representations and Warranties of SSLC</u>. SSLC hereby represents and warrants:

9.1. <u>Organization and Good Standing</u>. SSLC is a Delaware corporation duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

9.2. <u>Authority; Due Execution; Validity of Agreement</u>. Subject to the entry of the Approval Order: (a) SSLC has full corporate power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated

hereby; (b) the execution, delivery and performance by SSLC of this Agreement have been authorized by all necessary corporate action on behalf of SSLC; and (c) this Agreement has been duly and validly authorized, executed and delivered by SSLC and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of SSLC, enforceable against SSLC in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

9.3.    No Conflict.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall:  (a) conflict with or violate any provision of SSLC's organization documents; (b) upon entry of the Approval Order, conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule, judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which SSLC is subject; or (c) except with respect to entry of the Approval Order, require SSLC to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

9.4.    Broker's Fees.  No agent, broker, investment banker or other person or firm acting on behalf of SSLC is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 10. Representations and Warranties of ECIC.  ECIC hereby represents and warrants:

10.1.    Organization and Good Standing.  ECIC is a Delaware corporation duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

10.2.    Authority; Due Execution; Validity of Agreement.  ECIC has full corporate power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby.  The execution, delivery and performance by ECIC of this Agreement have been authorized by all necessary corporate action on behalf of ECIC.  This Agreement has been duly and validly authorized, executed and delivered by ECIC and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of ECIC, enforceable against ECIC in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and

fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

10.3.    No Conflict.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall:  (a) conflict with or violate any provision of ECIC's organization documents; (b) conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule, judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which ECIC is subject; or (c) require ECIC to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

10.4.    Broker's Fees.  No agent, broker, investment banker or other person or firm acting on behalf of ECIC is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 11. Representations and Warranties of EGEPI.  EGEPI hereby represents and warrants:

11.1.    Organization and Good Standing.  EGEPI is a Delaware corporation duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

11.2.    Authority; Due Execution; Validity of Agreement.  EGEPI has full corporate power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby.  The execution, delivery and performance by EGEPI of this Agreement have been authorized by all necessary corporate action on behalf of EGEPI.  This Agreement has been duly and validly authorized, executed and delivered by EGEPI and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of EGEPI, enforceable against EGEPI in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

11.3.    No Conflict.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall:  (a) conflict with or violate any provision of EGEPI's organization documents; (b) conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule, judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which EGEPI is subject; or (c) require EGEPI to give notice to, or obtain an authorization, approval, order, license, franchise,

declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

11.4.   Broker's Fees.  No agent, broker, investment banker or other person or firm acting on behalf of EGEPI is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 12. Representations and Warranties of ECB.  ECB hereby represents and warrants:

12.1.   Organization and Good Standing.  ECB is a Delaware limited liability company duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

12.2.   Authority; Due Execution; Validity of Agreement.  Subject to the entry of the Approval Order: (a) ECB has full power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby; (b) the execution, delivery and performance by ECB of this Agreement have been authorized by all necessary limited liability company action on behalf of ECB; and (c) this Agreement has been duly and validly authorized, executed and delivered by ECB and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of ECB, enforceable against ECB in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

12.3.   No Conflict.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall:  (a) conflict with or violate any provision of ECB's organization documents; (b) upon entry of the Approval Order, conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule, judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which ECB is subject; or (c) except with respect to entry of the Approval Order, require ECB to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

12.4.   Broker's Fees.  No agent, broker, investment banker or other person or firm acting on behalf of EGEPI is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 13. <u>Representations and Warranties of Boreas</u>.  Boreas hereby represents and warrants:

13.1.   <u>Organization and Good Standing</u>.  Boreas is a Delaware corporation duly organized, validly existing and in good standing under the laws of the state of its formation with full right, power and authority to execute, deliver and perform this Agreement.

13.2.   <u>Authority; Due Execution; Validity of Agreement</u>.  Boreas has full corporate power and authority to execute, deliver and perform this Agreement, and to consummate the transactions contemplated hereby.  The execution, delivery and performance by Boreas of this Agreement have been authorized by all necessary corporate action on behalf of Boreas.  This Agreement has been duly and validly authorized, executed and delivered by Boreas and (assuming the due authorization, execution and delivery by the other Parties) this Agreement constitutes the legal, valid and binding obligation of Boreas, enforceable against Boreas in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

13.3.   <u>No Conflict</u>.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, shall:  (a) conflict with or violate any provision of Boreas' organization documents; (b) conflict with, violate or result in a breach of, or constitute a default under, any law, statute, rule, judgment, order, decree, injunction, ruling or regulation of any Governmental Entity to which Boreas is subject; or (c) require Boreas to give notice to, or obtain an authorization, approval, order, license, franchise, declaration or consent of, or make any filing with, any third party, including without limitation, any Governmental Entity.

13.4.   <u>Broker's Fees</u>.  No agent, broker, investment banker or other person or firm acting on behalf of Boreas is or will be entitled to any broker's or finder's fee or any other commission or similar fee directly or indirectly from any other Party or any other person or entity in connection with any of the transactions contemplated by this Agreement.

SECTION 14. <u>Covenants and Agreements</u>.

14.1.   <u>Resignation of Directors/Managers</u>.  On the Redemption Date, immediately upon payment of the Redemption Amount: (a) any and all directors/managers of EFP appointed by JPMC, as Collateral Agent for the Zephyrus Lenders, or Zephyrus shall be deemed to have resigned such position, without the need for the execution and delivery of additional documentation; and (b) JPMC, as Collateral Agent for the Zephyrus Lenders, Zephyrus and the Zephyrus Lenders shall be deemed to have waived, released and discharged any claim, right or interest to assume control of the

management of EFP in accordance with the terms and provisions of the LLC Agreement, without the need for the execution and delivery of additional documentation.

14.2.    Filing of Motion Seeking Approval of, and Authority to Enter Into, this Agreement.  The Debtors shall file a motion as soon as practicable, but in no event later than the tenth (10th) Business Day following the date hereof, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking an order (the "Approval Order") granting approval of, and the authority to enter into, this Agreement, and to have a hearing to consider such motion in accordance with applicable orders entered in the Enron Cases.

14.3.    Release by the Zephyrus/JPMC Releasors.  On the Redemption Date, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, Zephyrus, JPMC, and their respective successors and assigns and each of their affiliates, officers, employees and agents (collectively, the "Zephyrus/JPMC Releasors"), hereby irrevocably and unconditionally forever release, acquit and forever discharge EFP, Sequoia, Cheyenne, EBS Ventures, LLC ("EBS"), Enron Capital Ventures, LLC ("ECV"), Enron Netherlands Holdings B.V., Seminole Capital LLC ("Seminole"), EFM, SSLC, EGEPI, Boreas, ECB, ECIC, Enron Intermediate Holdings, LLC ("EIH"), and Enron Asset Holdings, LLC ("EAH") and each of their respective past and present officers, directors and employees (collectively, the "Zephyrus/JPMC Releasees") from any and all claims, demands, liabilities and causes of action of any and every kind, character or nature whatsoever, in law or in equity, whether asserted or unasserted, which the Zephyrus/JPMC Releasors, or any of them, have or may have or claim to have, now or in the future, against any of the Zephyrus/JPMC Releasees to the extent arising under, relating to, or in connection with the Zephyrus Transactions, the Zephyrus Documents, or any act of commission or omission in respect of the Zephyrus Transactions or the Zephyrus Documents. Notwithstanding anything contained herein or elsewhere to the contrary, the foregoing is not intended to nor shall it have the effect of: (a) releasing the Allowed Claims or any claim or cause of action of the Zephyrus/JPMC Releasors under or in respect of the Allowed Claims or precluding any of the Parties from offering into evidence the existence of this release, this Agreement, the Settlement Agreement, the Cherokee Liquidation Agreement or the Approval Order in connection with any action to enforce the same; (b) releasing the Zephyrus/JPMC Releasees from the performance of their obligations in accordance with this Agreement, the Settlement Agreement, the Cherokee Liquidation Agreement and the terms of the Approval Order; (c) releasing any claim or cause of action of the Zephyrus/JPMC Releasors arising under this Agreement, the Settlement Agreement, the Cherokee Liquidation Agreement or the Approval Order; (d) releasing any claim or cause of action in any action, suit or proceeding permitted pursuant to the provisions of Section 14.4 of this Agreement; or (e) releasing any claim or cause of action of any Zephyrus/JPMC Releasor against any other Zephyrus/JPMC Releasor.

14.4.    Covenant Not to Sue.  To the fullest extent permitted by law, each of: (a) the Zephyrus Lenders; and (b) EFP (collectively, the "Zephyrus/EFP Grantors") agrees that it shall not initiate, commence or continue, or cause to be initiated, commenced or continued (or encourage or aid in the initiation of) any arbitration, action,

suit, litigation or other proceeding against any of the Enron Parties, and each of their respective officers and directors, partners, principals, subsidiaries, affiliates, parent companies and employees, including without limitation, the Debtors, Sequoia, Cheyenne, EBS, ECV, Enron Netherlands Holdings B.V., Seminole, EFM, SSLC, EGEPI, Boreas, ECB, ECIC, EIH and EAH (collectively, the "Covenant Beneficiaries") before any court, administrative agency or other tribunal with respect to any claim, demand, liability and cause of action of any and every kind, character or nature whatsoever, in law or in equity, which the Zephyrus/EFP Grantors have or may have or claim to have, now or in the future, against any Covenant Beneficiary to the extent arising under, relating to, or connected with the Zephyrus Transactions or the Zephyrus Documents, including without limitation, the filing of a claim or proof of claim with the Bankruptcy Court in connection with the Enron Cases; provided, however, that nothing contained in this Section 14.4 is intended to preclude: (y) the Zephyrus/EFP Grantors from (i) initiating, commencing or continuing any action, suit or other proceeding to enforce the provisions of this Agreement, the Settlement Agreement, the Cherokee Liquidation Agreement or the Approval Order and the performance of obligations hereunder and thereunder, (ii) initiating, commencing or continuing any action, suit or other proceeding against principals, officers, directors or employees of the Covenant Beneficiaries in the event that one or more of the Covenant Beneficiaries or any other third party or entity commences or has commenced an action, suit or other proceeding against the Zephyrus/EFP Grantors which involves, is predicated upon, relates to, respecting, or refers to, in whole or in part, the Zephyrus Transactions or the Zephyrus Documents; provided, however, that in the event that (A) any of the Zephyrus/EFP Grantors initiate, commence or continue an action, suit or other proceeding against a principal, officer, director or employee of the Covenant Beneficiaries, (B) any such action, suit or other proceeding gives rise to or results in a judgment or final order requiring the payment of monies to the plaintiff therein (the "Judgment Amount"), and (C) with respect to the claims and causes of action giving rise to the Judgment Amount, the defendant in such action, suit or other proceeding has a claim for contribution, indemnification or reimbursement, or has incurred costs and expenses which gives rise to an enforceable claim against any of the Debtors or the Enron Parties and a final judgment or final order requiring the payment thereof by any of the Debtors or the Enron Parties is entered by a court of competent jurisdiction (the aggregate amount of all such rights, claims, costs and expenses that the Debtors or the Enron Parties are required to pay pursuant to such final judgment or order being referred to herein as the "Indemnified/Contribution Amount"), then (1)(I) the Zephyrus/EFP Grantors shall reduce the Judgment Amount to the extent of the Indemnified/Contribution Amount, or (II) if reduction of the Judgment Amount will not reduce the Indemnified/Contribution Amount to zero, then, to the extent that the Debtors or the Enron Parties make payments in respect of the Indemnified/Contribution Amount and the Zephyrus/EFP Grantors receive payment of the Judgment Amount inclusive of an amount equal to the payment of the Indemnified/Contribution Amount, the applicable Zephyrus/EFP Grantor receiving such payment shall pay the amount thereof attributable to the Indemnified/Contribution Amount to the applicable Debtor or Enron Party, (2) none of the Zephyrus/EFP Grantors shall be entitled to assert a claim against any of the Debtors or the Enron Parties with respect to the Indemnified/Contribution Amount, and (3) none of the Debtors or the Enron Parties shall have any liability with respect to the Indemnified/Contribution Amount, or (iii) asserting and establishing any defense or

apportionment in connection with a litigation against them or any of them, including without limitation, in connection with the Recovery Action and other presently pending actions; or (z) the Zephyrus/EFP Grantors from commencing any action, suit or other proceeding against Enron Netherlands Holdings B.V. arising from or relating to any and all outstanding promissory notes and accounts payable of Enron Netherlands Holdings B.V. issued or currently for the benefit of the Zephyrus/EFP Grantors. This Covenant Not to Sue shall be a complete defense to any arbitration, suit, action, litigation or other proceeding brought in violation of this Covenant Not to Sue.

      14.5.  Recovery Action Indebtedness. The Parties agree that: (a) a Recovery Action Defendant's act of acquiring Zephyrus Funding during the period following the Petition Date shall not form the basis of any (i) claim that might be premised, in part, upon the knowledge of, duty of, or course of conduct by, counterparties in connection with transactions with or among the Debtors, the Enron Parties, ENE officers, and/or related entities arising from or relating to the period prior to the Petition Date (the "Course of Conduct Claims"), or (ii) claim by any party-in-interest seeking to subordinate, disallow or seek the waiver of any claim of such Recovery Action Defendant relating to such Zephyrus Funding, if such Recovery Action Defendant did not hold Recovery Action Indebtedness and/or did not have or hold any direct or indirect rights, obligations, interests or claims of any kind or nature whatsoever in any of the Zephyrus Transactions or under the Zephyrus Documents prior to, or as of, the Petition Date; and (b) Course of Conduct Claims shall not be used to withhold or challenge any distributions to be made to any Zephyrus Party on account of Allowed Claims, pursuant to this Agreement, the Settlement Agreement or the Cherokee Liquidation Agreement, except to the extent that the interest of such Zephyrus Party in such Allowed Claim constitutes Recovery Action Indebtedness.

      SECTION 15. Conditions Precedent to the Obligations of All of the Parties. The obligations of all of the Parties pursuant to this Agreement are subject to the fulfillment of each of the following conditions, any one or more of which may be waived in writing by all of the Parties.

      15.1.  No Adverse Proceedings. No suit, action, claim or governmental proceeding shall be pending against, and no order, decree or judgment of any court, agency, or other Governmental Entity shall have been rendered against, any Party which would render it unlawful, as of the Redemption Date, to effect the transactions contemplated by this Agreement in accordance with its terms.

      15.2.  Entry of the Approval Order. The Bankruptcy Court shall have entered the Approval Order.

      15.3.  Occurrence of the Effective Date. The Effective Date, as such term is defined in the Settlement Agreement, shall have occurred and the transactions contemplated by the Settlement Agreement shall have been effectuated.

      15.4.  Consent to this Agreement by the Official Committee of Unsecured Creditors. The official statutory committee of unsecured creditors appointed

in the Enron Cases shall have consented to and acknowledged this Agreement by executing it in the space provided below.

SECTION 16. <u>Conditions Precedent to the Obligations of the Enron Parties</u>.  In addition to the conditions precedent set forth in Section 15 above, the obligations of the Enron Parties pursuant to this Agreement are subject to the fulfillment of each of the following conditions, any one or more of which may be waived in writing by all of the Enron Parties:

16.1.    <u>Representations and Warranties</u>.  All representations and warranties of Zephyrus, JPMC and EFP contained herein shall be true and correct in all material respects on and as of the Redemption Date with the same force and effect as though made on and as of the Redemption Date.

16.2.    <u>Covenants and Agreements</u>.  Zephyrus, JPMC and EFP shall have performed and complied with, in all material respects, all of the covenants and agreements made by them in this Agreement.

SECTION 17. <u>Conditions Precedent to the Obligations of Zephyrus, JPMC and EFP</u>.  In addition to the conditions precedent set forth in Section 15 above, the obligations of Zephyrus, JPMC and EFP pursuant to this Agreement are subject to the fulfillment of each of the following conditions, any one or more of which may be waived in writing by Zephyrus, JPMC and EFP:

17.1.    <u>Representations and Warranties</u>.  All representations and warranties of the Enron Parties contained herein shall be true and correct in all material respects on and as of the Redemption Date with the same force and effect as though made on and as of the Redemption Date.

17.2.    <u>Covenants and Agreements</u>.  The Enron Parties shall have performed and complied with, in all material respects, all of the covenants and agreements made by them in this Agreement.

SECTION 18. <u>Survival</u>.  Each of the representations, warranties, covenants and agreements of the Parties in this Agreement shall survive the Redemption Date.

SECTION 19. <u>Headings.</u>  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

SECTION 20. <u>Governing Law; Submission to Jurisdiction</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to principles of any conflicts of law.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or

proceeding, may be brought in the Bankruptcy Court for that purpose only, and, by execution and delivery of this Agreement, each of the Parties hereby irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding. In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in the Settlement Agreement.

SECTION 21. Specific Performance. It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach.

SECTION 22. Fees and Expenses. If any Party brings an action against any other Party based upon a breach by the other Party of its obligations under this Agreement, the prevailing Party shall be entitled to all reasonable expenses incurred, including reasonable attorneys' fees and expenses.

SECTION 23. Binding Effect. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their respective successors, assigns, heirs, executors, administrators, constituents and representatives.

SECTION 24. Entire Agreement. This Agreement, together with the Settlement Agreement and the Cherokee Liquidation Agreement, constitutes the full and entire agreement among the Parties (that are party thereto) with regard to the subject hereof, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof. No Party has entered into this Agreement in reliance upon any other Party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Agreement. Furthermore, the recitals to this Agreement are an integral part of this Agreement and are incorporated herein as binding upon the Parties.

SECTION 25. Amendments. No amendment, modification or waiver in respect of this Agreement shall be effective unless it shall be in writing and signed by each of the Parties.

SECTION 26. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall, taken together, be considered one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided that receipt of copies of such counterparts is confirmed.

SECTION 27. Further Assurances. Each of the Parties agrees to execute and deliver, or cause to be executed and delivered, all such instruments, and to take all

such actions as the other Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement, including without limitation, such instruments or documents in connection with the assignment of promissory notes, accounts receivable and other obligations attendant to the transactions contemplated herein.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first written above.

ENRON FINANCE PARTNERS, LLC

By: _____
Name: F, HALL WEST
Title: DIRECTOR

ENRON CORP., as Debtor in Possession

By: _____
Name: Raymond M. Bowen, Jr.
Title:  Executive Vice President,
        Chief Financial Officer and Treasurer

ENRON FINANCE MANAGEMENT, LLC

By: _____
Name: David C. Williams
Title:  Agent and Attorney-in-Fact

SMITH STREET LAND COMPANY,
as Debtor in Possession

By: _____
Name: David C. Williams
Title:  Agent and Attorney-in-Fact

ENRON CAPITAL INVESTMENTS CORP.

By: _____
Name: David C. Williams
Title:  Agent and Attorney-in-Fact

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first written above.

ENRON FINANCE PARTNERS, LLC

By:_____
Name:
Title:


ENRON CORP., as Debtor in Possession

By: _____
Name: Raymond M. Bowen, Jr.
Title: Executive Vice President,
       Chief Financial Officer and Treasurer


ENRON FINANCE MANAGEMENT, LLC

By:_____
Name: David C. Williams
Title: Agent and Attorney-in-Fact


SMITH STREET LAND COMPANY,
as Debtor in Possession

By:_____
Name: David C. Williams
Title: Agent and Attorney-in-Fact


ENRON CAPITAL INVESTMENTS CORP.

By:_____
Name: David C. Williams
Title: Agent and Attorney-in-Fact

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first written above.

ENRON FINANCE PARTNERS, LLC

By:_____
Name:
Title:

ENRON CORP., as Debtor in Possession

By:_____
Name: Raymond M. Bowen, Jr.
Title:  Executive Vice President,
        Chief Financial Officer and Treasurer

ENRON FINANCE MANAGEMENT, LLC

By:_____
Name: David C. Williams
Title:  Agent and Attorney-in-Fact

SMITH STREET LAND COMPANY,
as Debtor in Possession

By:_____
Name: David C. Williams
Title:  Agent and Attorney-in-Fact

ENRON CAPITAL INVESTMENTS CORP.

By:_____
Name: David C. Williams
Title:  Agent and Attorney-in-Fact

ENRON GLOBAL EXPLORATION &
PRODUCTION, INC.

By: _____
Name: David C. Williams
Title:   Agent and Attorney-in-Fact

ENRON CARIBBEAN BASIN LLC,
as Debtor in Possession

By: _____
Name: David C. Williams
Title:   Agent and Attorney-in-Fact

BOREAS HOLDINGS CORP.

By: _____
Name: David C. Williams
Title:   Agent and Attorney-in-Fact

ZEPHYRUS INVESTMENTS, LLC
By:   J.P. MORGAN LEASING INC.
      Managing Member

By: _____
Name:
Title:

JPMORGAN CHASE BANK, for itself and as
Administrative Agent and Collateral Agent for the
Zephyrus Lenders

By: _____
Name:
Title:

ENRON GLOBAL EXPLORATION &
PRODUCTION, INC.


By:_____
Name: David C. Williams
Title:   Agent and Attorney-in-Fact


ENRON CARIBBEAN BASIN LLC,
as Debtor in Possession


By:_____
Name: David C. Williams
Title:   Agent and Attorney-in-Fact


BOREAS HOLDINGS CORP.


By:_____
Name: David C. Williams
Title:   Agent and Attorney-in-Fact


ZEPHYRUS INVESTMENTS, LLC
By:    J.P. MORGAN LEASING INC.
       Managing Member


By:_____
Name:    F. HALL WEBB
Title:      M D


JPMORGAN CHASE BANK, for itself and as
Administrative Agent and Collateral Agent for the
Zephyrus Lenders


By:_____
Name:    F. HALL WEBB
Title:      M D


20

Consented To and Acknowledged By

THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

By: _____
Name: Julie J. Becker
Title: Co-Chair

Wells Fargo Bank, N.A.
As Indenture Trustee