# EXHIBIT 17

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— :
                                          :
In re:                                    :        Chapter 11
                                          :
ENRON CORP., *et al.*,                    :        Case No. 01-16034 (AJG)
                                          :
                    Debtors.              :        (Jointly Administered)
—————————————————————— :

### ORDER CONFIRMING SUPPLEMENTAL MODIFIED FIFTH AMENDED JOINT PLAN OF AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, AND RELATED RELIEF

The Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated January 9, 2004 (the "Fifth Amended Plan"), as thereafter amended pursuant to that certain (1) Modification of Fifth Amended Plan of Reorganization for Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated June 1, 2004 (the "Initial Modification") (Docket No. 18793), and (2) Supplemental Modification of Fifth Amended Joint Plan of Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated July 2, 2004 (the "Supplemental Modification" and, together with the Fifth Amended Plan and the Initial Modification, the "Plan") [1] (Docket No. 19477), having been filed with the Court by ENE and certain of its direct and indirect subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors") [2]; and the Court having entered, pursuant to, *inter alia*,

---

[1] A copy of the Plan is annexed hereto as Exhibit A. Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan.

[2] As set forth in Section 7.9 of the Initial Modification, pursuant to the Bankruptcy Court's order, dated April 8, 2004, and the notice, dated May 17, 2004, in connection therewith (Docket Nos. 17625 and 18434), (a) a majority of the equity interests of Enron Mauritius Company, Enron India Holdings Ltd. and Offshore Power Production C.V. (collectively, the "Dabhol Debtors") were sold, (b) such entities were, among other things, removed as Debtors and Proponents of the Plan, and (c) Classes 58, 59, 60, 246, 247 and 248 of the Plan have been rendered unnecessary and inoperative.

section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b), after due notice and hearing,

orders, dated January 9, 2004, approving the Disclosure Statement for Fifth Amended Joint Plan

of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated

January 9, 2004 (the "Disclosure Statement"), and establishing procedures for voting on the Fifth

Amended Plan, respectively (collectively, the "Disclosure Statement Approval Orders"), which

established procedures for the solicitation, voting and tabulation of votes on the Fifth Amended

Plan, approved the forms of ballots and master ballots used in connection therewith, and

scheduled the Confirmation Hearing to consider confirmation of the Fifth Amended Plan

pursuant to sections 1128 and 1129 of the Bankruptcy Code; and the affidavits of service of

solicitation packages and notices of non-voting status (the "Affidavits of Service") having been

filed with the Court; and the affidavits of publication of notice of the Confirmation Hearing (the

"Affidavits of Publication") having been filed with the Court; and due notice of the Confirmation

Hearing having been given to holders of Claims against and Equity Interests in the Debtors and

to other parties in interest, all in accordance with the Bankruptcy Code, the Bankruptcy Rules

and the Disclosure Statement Approval Orders, and it appearing that no other or further notice

need be given; and the Confirmation Hearing having been held by the Court on June 3, 4, 8, 9,

10, 14, 16, 17 and 18, 2004; and the appearances of all interested parties having been noted in the

record of the Confirmation Hearing; and after full consideration of: (a) each of the objections to

confirmation of the Plan not otherwise withdrawn or resolved (collectively, the "Objections"),

(b) the Debtors' response and memorandum of law in support of confirmation of the Plan, each

---

In addition, as stated on the record at the Confirmation Hearing, the Debtors and the Creditors' Committee have reached a settlement in principal, subject to definitive documentation and Bankruptcy Court approval, with certain former employees of Portland General Holdings ("PGH"). Consequently, the Confirmation Hearing was adjourned with respect to the Portland Debtors, and the Debtors may move to dismiss one or both of the Portland Debtors' cases upon approval of the settlement by the Bankruptcy Court.

dated June 1, 2004 (Docket Nos. 18797 and 18798), (c) the Creditors' Committee's statement, dated June 1, 2004 (Docket No. 18795), (d) the Baupost Group and Racepoint Partners' comment, dated June 1, 2004 (Docket No. 18786), (e) the ENA Examiner's citations to the record, dated June 22, 2004 (Docket No. 19283), (f) the Debtors' proposed findings of fact and conclusions of law, dated June 23; 2004 (Docket No. 19307), (g) various counter-proposed findings of fact and conclusions of law filed by multiple parties in interest on June 29 – July 1, 2004 (Docket Nos. 19407, 19408, 19420, 19423, 19424, 19428, 19429, 19430, 19432, 19433, 19438, 19451 and 19453), and (h) the Debtors' reply to the various counter-proposed findings of fact and conclusions of law, dated July 7, 2004, and the Debtors' modified proposed findings of fact and conclusions of law, dated July 7, 2004 (Docket Nos. 19532 and 19533, respectively); and upon the arguments of counsel and all of the evidence adduced at the Confirmation Hearing and the record in these Chapter 11 Cases; and after due deliberation and good and sufficient cause appearing therefore; and the Court having rendered its decision to CONFIRM the Plan and entered its findings of fact and conclusions of law on July 15, 2004,

It hereby is DECREED AND ORDERED:

## **JURISDICTION**

1.      This Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. § 1334.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Confirmation of the Plan is a core proceeding determined by this Court pursuant to 28 U.S.C. § 157(b)(2)(L).

## MODIFICATIONS TO THE PLAN

4.      The Plan complies with section 1127 of the Bankruptcy Code.

5.      On June 1, 2004 and July 2, 2004, the Debtors filed the Initial Modification and the Supplemental Modification (Docket Nos. 18793 and 19477), respectively.

6.      The Initial Modification and the Supplemental Modification (collectively, the "Modifications") do not adversely affect the treatment of any Class of Claims or Equity Interests in the Debtors under the Fifth Amended Plan.

7.      In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims against the Debtors who voted to accept the Plan are hereby deemed to have accepted the Fifth Amended Plan, as amended consistent with the Modifications.

8.      No holder of a Claim against the Debtors that has voted to accept the Fifth Amended Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modifications.

9.      The filing with the Court of the Modifications, the service of the same in accordance with the Court's Case Management Order, and the disclosure of the Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.

## CONFIRMATION OF THE PLAN

10.      The Plan complies fully with sections 1122 and 1123 of the Bankruptcy Code.  The Debtors have complied with section 1125 with respect to the Disclosure Statement and the Plan.

11.      The Findings of Fact and Conclusions of Law Supporting The Approval Of (A) Certain Settlements Under The Supplemental Modified Fifth Amended Joint Plan Of Affiliated Debtors Pursuant To Chapter 11 Of The United States Bankruptcy Code; (B) The

4

Debtors' Motion Pursuant To Bankruptcy Rule 9019 And Sections 105 And 363 Of The

Bankruptcy Code Seeking Approval Of The Global Compromise Of Inter-Estate Issues; (C) The

Motion Of Debtors Pursuant To Section 363 Of The Bankruptcy Code For Order Approving And

Authorizing Post-Confirmation Allocation Formula For Overhead And Expenses; And (D)

Confirmation Of The Plan, dated July 15, 2004, (the "Findings and Conclusions") are hereby

incorporated by reference into, and are an integral part of, this Confirmation Order.

   12.  The Plan is CONFIRMED.

**PLAN PROVISIONS**

<u>Implementation of the Plan</u>

   13.  The compromise and settlement set forth in Section 2.1 of the Plan is

approved in all respects.  On the Effective Date, such compromise and settlement shall be

binding upon the Debtors, all Creditors, all holders of Equity Interests and other Entities.

   14.  From and after the Effective Date, holders of Allowed Claims and

Allowed Equity Interests shall receive a portion of their distributions based upon the assets and

liabilities of all the Debtors, other than the Portland Debtors.[3]  Any Claims against one or more

of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims

against another Debtor shall be treated as separate and distinct Claims against the estate of the

respective Debtors and shall be entitled to distributions under the Plan in accordance with the

provisions thereof.

---

[3] Although not excluded from the Plan, Enron Development Funding Limited ("EDF"), a Debtor, is also the subject of insolvency proceedings in the Cayman Islands.  (Stipulation And Agreed Order Establishing Procedures For Compensation And Reimbursement Of Expenses For Professionals Of Enron Development Funding Limited And Its Joint Provisional Liquidators, dated June 26, 2003, Docket No. 11953).  In light of the joint proceedings, until such time as the Cayman scheme of arrangement proceedings has concluded, currently anticipated to be in August 2004, no distributions of assets held by or attributed to EDF will be made to Creditors holding Allowed Claims pursuant to the Plan.

15.    The record date for determining the holders of Allowed Claims and Allowed Equity Interests entitled to receive distributions under the Plan shall be the date of the entry of this Confirmation Order.

16.    Within thirty (30) days following the second (2nd) anniversary of the Effective Date, the Reorganized Debtors shall file a list with the Court setting forth the names of those Entities for which distributions have been made under the Plan and have been returned as undeliverable as of the date thereof.  Any holder of an Allowed Claim or Allowed Equity Interest set forth on such list and that does not assert its rights pursuant to the Plan to receive a distribution within three (3) years from and after the Effective Date shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan against the Reorganized Debtors or their property.  In such case, any consideration held for distribution on account of such Claim or Equity Interest shall revert to the Reorganized Debtors for redistribution to holders of Allowed Claims and Allowed Equity Interests in accordance with the provisions of Section 32.1 of the Plan.

17.    Subject to the provisions of Bankruptcy Rule 9010 and the TOPRS Stipulation, and except as provided in Section 32.4 of the Plan, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Court unless superseded by the address set forth on proofs of claim filed by such holders, or at the last known address of such a holder if no proof of claim is filed or if the Debtors have been notified in writing of a change of address or at the address provided in any applicable notice of transfer filed with the Clerk of the Court pursuant to Bankruptcy Rule 3001(e) and served upon the Debtors or the Reorganized Debtors, as the case may be, in accordance with the notice provision set forth in Section 42.16 of Plan.  Subject to the provisions

6

of Section 9.1 of the Plan and the TOPRS Stipulation, distributions for the benefit of holders of

Enron Senior Notes shall be made to the appropriate Enron Senior Notes Indenture Trustee.

Each such Enron Senior Notes Indenture Trustee shall in turn administer the distribution to the

holders of Allowed Enron Senior Note Claims in accordance with the provisions of the Plan and

the applicable Enron Senior Notes Indenture.  The Enron Senior Notes Indenture Trustee shall

not be required to give any bond or surety or other security for the performance of their duties

unless otherwise ordered by the Court.

18.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the

provisions of this Confirmation Order, the Plan, and all Plan-related documents (including, but

not limited to, the Plan Supplement) shall apply and be enforceable notwithstanding any

otherwise applicable nonbankruptcy law.

19.    The respective forms of the Reorganized Debtors Certificate of

Incorporation and the Reorganized Debtors By-laws set forth or referenced in Schedules P and Q

of the Plan Supplement are approved.  On the Effective Date, such applicable forms of

Reorganized Debtors Certificate of Incorporation and Reorganized Debtors By-laws, with any

changes to conform to each Reorganized Debtor's respective entity type, capital structure,

jurisdictional requirements, governance requirements, and economic requirements deemed

necessary, appropriate or advisable by (a) the President, any Associate Director, any Vice

President, any Managing Director, the General Counsel or any Associate General Counsel, of the

applicable Reorganized Debtor, if such Reorganized Debtor has officers; (b) any general partner

of such Reorganized Debtor, if such Reorganized Debtor is a general partnership or limited

partnership; (c) any managing member of such Reorganized Debtor, if such Reorganized Debtor

is a limited liability company; or (d) the board of directors of such Reorganized Debtor, if such

Reorganized Debtor has directors, shall be authorized and approved as (1) the certificate or articles of incorporation and bylaws, respectively, in the case of a Reorganized Debtor that is a corporation incorporated under the laws of one of the United States of America; (2) the certificate or articles of formation and limited liability company agreement, respectively, in the case of a Reorganized Debtor that is a limited liability company under the laws of one of the United States of America; (3) the certificate or articles of limited partnership and limited partnership agreement, respectively, in the case of a Reorganized Debtor that is a limited partnership under the laws of one of the United States of America; (4) the general partnership agreement (which, unless otherwise agreed to, in writing, by the Debtors and the Creditors' Committee, shall each be on the same terms as the form of limited partnership agreement set forth in Schedule P to the Plan Supplement), in the case of a Reorganized Debtor that is a general partnership under the laws of one of the United States of America; (5) memorandum of association and articles of association, respectively, in the case of a Reorganized Debtor that is a Cayman Islands limited company; and (6) charter, in the case of a Reorganized Debtor formed under the laws of the Netherlands, of each Reorganized Debtor, without further action under applicable law, regulation, order, rule or agreement, including, without limitation, any action by the shareholders, stockholders, officers, members, partners, board of directors or managers, as applicable, of such Reorganized Debtor.  Without limiting the approval and authority granted in the foregoing sentence, each officer, director, managing director, general counsel, associate general counsel, partner, member and manager, as the case may be, of each Reorganized Debtor is hereby, authorized, empowered, and directed, for and on behalf and in the name of the Reorganized Debtor of which it is an officer, director, managing director, general counsel, associate general counsel, partner, member or manager, as the case may be, without further

action or approval, of any shareholder, stockholder, officer, board of directors, manager, member

or partner, as the case may be, to take any further action and to do all things it may deem

necessary, appropriate or advisable to effect the amendment and/or restatement of the

organizational documents of the respective Reorganized Debtors described in the foregoing

sentence, (collectively, the "Organizational Documents"), including, without limitation,

executing documents, agreements and certificates, filing, as applicable, the Organizational

Documents of each Reorganized Debtor with the appropriate governmental authority and paying

any filing fees in connection therewith, placing copies of the applicable filed Organizational

Documents in the minute book of each such Reorganized Debtor, and giving any consent on

behalf of a Reorganized Debtor as a shareholder, stockholder, member or partner of another

Reorganized Debtor to approve the Organizational Documents of such other Reorganized

Debtor.  Notwithstanding the form in the Plan Supplement, the certificate of limited partnership

of a Reorganized Debtor that is a limited partnership shall contain a prohibition on the issuance

of nonvoting equity securities.

      20.    As of the Effective Date, the boards of directors or managers of each

respective Debtor, as constituted immediately prior to the Effective Date that had a board of

directors or managers, are hereby removed and (a) Stephen D. Bennett, Rick A. Harrington,

James R. Latimer, III, and John J. Ray, III are hereby appointed as the board of directors of

Reorganized ENE to serve until their resignation or removal pursuant to the Reorganized Debtor

Certificate of Incorporation of Reorganized ENE; provided, however, that, pursuant to the notice,

dated June 2, 2004 (the "Director Notice") (Docket No. 18841), in the event that the Debtors

select a replacement person during the period from the date hereof up to, but not including the

Effective Date, such selection shall be made in a manner consistent with Section 40.1 of the Plan

and be deemed to have been made as of the date hereof; (b) Raymond M. Bowen, Jr., Robert H.

Walls, Jr. and K. Wade Cline are hereby appointed as the board of directors of the Debtors listed

on Exhibit B1 hereto to serve until their resignation or removal pursuant to the Organizational

Documents of such Reorganized Debtor; (c) Raymond M. Bowen, Jr., Robert H. Walls, Jr., K.

Wade Cline and Robert J. Semple, are hereby appointed as the board of directors of the Debtors

listed on Exhibit B2 hereto, to serve until their resignation or removal pursuant to the

Organizational Documents of such Reorganized Debtor; (d) each Reorganized Debtor that is a

limited liability company formed under the laws of one of the United States of America that was

manager or director managed immediately prior to the Effective Date shall be converted to a

member managed limited liability company with the member holding the largest membership

interest therein being designated as the managing member thereof; and (e) each member holding

the largest membership interest in a Reorganized Debtor that is a limited liability company

formed under the laws of one of the United States of America that was member managed, but did

not have a designated managing member immediately prior to the Effective Date is hereby

designated as the managing member of such Reorganized Debtor.  Each of the individuals named

in Section V of Schedule U and V of the Plan Supplement as officers of the respective

Reorganized Debtors are hereby appointed to the office of each such Reorganized Debtor set

forth for such individual in such Schedule, and as an officer of the same title of each of the

Reorganized Debtors listed on Exhibit B3 hereto, to serve until his or her resignation or removal.

      21.     The cancellation of all Equity Interests and other matters provided under

the Plan involving the corporate structure of the Reorganized Debtors or corporate action by the

Reorganized Debtors shall be deemed to have occurred, be authorized, and shall be in effect, all

in accordance with the provisions of the Plan, without requiring further action under applicable

law, regulation, order, or rule, including, without limitation, any action by the shareholders, stockholders, officers, board of directors, partners, members and managers of the Debtors or the Reorganized Debtors.  As a condition to receiving any distribution with respect to any Preferred Equity Trust Interest or Common Equity Trust Interest (which will not occur unless Plan Currency and Trust Interests are deemed redistributed to holders of Allowed Enron Preferred Equity Interests pursuant to Sections 7.5, 8.2, 9.2 and 17.2 of the Plan, in the case of Preferred Equity Trust Interests, and to holders of Allowed Enron Common Equity Interests pursuant to Sections 7.5, 8.2, 9.2, 17.2 and 18.2 of the Plan, in the case of Common Equity Trust Interest), each record holder of a certificate representing Enron Preferred Equity Interests or Enron Common Equity Interests, as the case may be, in exchange for which such Preferred Equity Trust Interest or Common Equity Trust Interest was allocated upon the cancellation of such Equity Interests pursuant to the Plan, shall (a) surrender such certificate to the Disbursing Agent or its designee, or (b) deliver to the Disbursing Agent or its designee an affidavit claiming such certificate to be lost, stolen or destroyed, and, if required by the Disbursing Agent, post a bond in such reasonable amount as the Disbursing Agent may direct as indemnity by such person against any claim that may be made against any Reorganized Debtor or the Disbursing Agent with respect to such certificate.

22.    Notwithstanding any applicable law or contract, and except as otherwise provided in the Plan, no Debtor shall be deemed removed as a member or partner of a limited liability company or limited partnership, respectively, nor shall any limited liability company or limited partnership be deemed to have been dissolved, or be in dissolution, as a result of filing a voluntary petition for bankruptcy in the Chapter 11 Cases.

23.     Without limiting the foregoing, from and after the Confirmation Date, the Debtors, the Reorganized Debtors and the Reorganized Debtor Plan Administrator may take any and all actions deemed appropriate in order to consummate the transactions contemplated herein, including, without limitation, selling or otherwise disposing of all of the Reorganized Debtors' assets and winding-up their respective affairs and not engaging in business (except to the extent reasonably necessary to, and consistent with, such purpose).  Notwithstanding any provision contained in the Debtors' organizational or charter documents, or the Reorganized Debtors' Organizational Documents, as the case may be to the contrary, such Entities shall not require the affirmative vote of holders of Equity Interests to take any corporate action including to (a) consummate a Sale Transaction, (b) compromise and settle claims and causes of action of or against the Debtors and their chapter 11 estates, and (c) dissolve, merge or consolidate with any other Entity.

24.     This Confirmation Order hereby incorporates, without modification, each provision of the Court's order, dated February 5, 2004 (the "PGE Sale Order"), pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 6004(a), authorizing and approving the terms and conditions of that certain Stock Purchase Agreement, dated as of November 18, 2003, by and between ENE and Oregon Electric Utility, LLC, for the sale by ENE of all the issued and outstanding shares of PGE (the "PGE Purchase Agreement"), and Reorganized ENE or the PGE Trust, to the extent created pursuant to the provisions of the Plan, shall be bound in accordance with the terms of the PGE Purchase Agreement and the PGE Sale Order as if it were deemed "Seller" thereunder.

25.     Pursuant to section 1145 of the Bankruptcy Code, issuance of the Plan Securities, the Litigation Trust Interests and the Special Litigation Trust Interests on account of,

and in exchange for, the Claims against the Debtors are exempt from registration pursuant to

section 5 of the Securities Act of 1933 and any other applicable nonbankruptcy law or regulation.

       26.    Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer

or exchange of notes, Equity Interests, Plan Securities, Exchanged Enron Common Stock or

Exchanged Enron Preferred Stock pursuant to the Plan, the creation of any mortgage, deed of

trust, or other security interest, the making or assignment of any lease or sublease, or the making

or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection

with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other

similar tax.  All filing or recording officers, wherever located and by whomever appointed, are

hereby directed to accept for filing or recording, and to file or record immediately upon

presentation thereof, all such deeds, bills of sale, mortgages, leasehold mortgages, deeds of trust,

leasehold deeds of trust, memoranda of lease, notices of lease, assignments, leasehold

assignments, security agreements, financing statements, and other instruments of absolute or

collateral transfer without payment of any stamp tax, transfer tax, or similar tax imposed by

federal, state or local law, and, to the extent necessary, the Court retains jurisdiction to enforce

the foregoing direction, by contempt or otherwise.

       27.    The Litigation Trust Agreement is approved in all respects.  If and only if

the Litigation Trust is formed pursuant to Section 22.1 of the Plan, Stephen Forbes Cooper, LLC

is approved as Litigation Trustee and, as of the date that the Litigation Trust Agreement becomes

effective, is so appointed and vested with the powers necessary and appropriate to enable the

Litigation Trustee to carry out its responsibilities as defined in the Plan and the Litigation Trust

Agreement.  Upon the joint determination of the Debtors or the Reorganized Debtors, as the case

may be, and, provided that the Creditors' Committee has not been dissolved in accordance with

the provisions of Section 33.1 of the Plan, the Creditors' Committee, on or after the Effective

Date, but in no event later than December 31st of the calendar year in which the Effective Date

occurs, unless such date is otherwise extended by the Debtors or the Reorganized Debtors, as the

case may be, and the Creditors' Committee, in their joint and absolute discretion and by notice

filed with the Court, Reorganized ENE, on its own behalf, on behalf of the other Reorganized

Debtors, and on behalf of holders of Allowed Claims in Classes 3 through 190, shall execute the

Litigation Trust Agreement and shall take all other steps necessary to establish the Litigation

Trust; provided, however, that in the event that the board of directors of Reorganized ENE and,

provided that the Creditors' Committee has not been dissolved in accordance with the provisions

of Section 33.1 of the Plan, the Creditors' Committee determines that the aggregate distributions

of Plan Currency and Trust Interests would permit a distribution to be made pursuant to Section

17.2, 18.2 or 19.2 of the Plan, then the Debtors or the Reorganized Debtors, as the case may be,

shall modify the Plan to provide for such distributions to be made.  If the Litigation Trust is

created, in accordance with and pursuant to the terms of Article XXII of the Plan, the Debtors or

the Reorganized Debtors, as the case may be, shall transfer to the Litigation Trust, (a) all of their

right, title, and interest in the Litigation Trust Claims, and (b) subject to the provisions of the

Post-Confirmation Allocation Formula, such amounts of Cash as jointly determined by the

Debtors or the Reorganized Debtors, as the case may be, and the Creditors' Committee as

necessary to fund the operations of the Litigation Trust.  Notwithstanding the foregoing, for

purposes of section 553 of the Bankruptcy Code, in accordance with Section 22.13 of the Plan,

the transfer of the Litigation Trust Claims to the Litigation Trust shall not affect the mutuality of

obligations which may have otherwise existed prior to the effectuation of such transfer.  In the

event that the Litigation Trust is created, Stephen D. Bennett, Rick A. Harrington, James R.

Latimer, III, and John J. Ray, III are appointed as members of the Litigation Trust Board and

vested with the powers necessary and appropriate to enable the Litigation Trust Board to carry

out its responsibilities as defined in the Plan and the Litigation Trust Agreement; provided,

however, that pursuant to the Director Notice and unless otherwise expressly set forth, in the

event that a replacement director is selected for Reorganized ENE, such selection shall be

deemed to be applicable to the Litigation Trust Board.

       28.     The Special Litigation Trust Agreement is approved in all respects. If and

only if the Special Litigation Trust is formed pursuant to Section 23.1 of the Plan, ABN Amro

Bank, Calyon, as successor to Credit Lyonnais, and Wells Fargo Bank Minnesota, N.A., are

hereby appointed as members of the Special Litigation Trust Board and directed to take such

action as is necessary to appoint the Special Litigation Trustee. Upon the joint determination of

the Debtors or the Reorganized Debtors, as the case may be, and, provided that the Creditors'

Committee has not been dissolved in accordance with the provisions of Section 33.1 of the Plan,

the Creditors' Committee, on or after the Effective Date, but in no event later than December 31st

of the calendar year in which the Effective Date occurs, unless such date is otherwise extended

by the Debtors or the Reorganized Debtors, as the case may be, and the Creditors' Committee, in

their joint and absolute discretion and by notice filed with the Court, Reorganized ENE, on its

own behalf, on behalf of the other Reorganized Debtors, and on behalf of holders of Allowed

Claims in Classes 3 through 190, shall execute the Special Litigation Trust Agreement and shall

take all other steps necessary to establish the Special Litigation Trust; provided, however, that in

the event that the board of directors of Reorganized ENE and, provided that the Creditors'

Committee has not been dissolved in accordance with the provisions of Section 33.1 of the Plan,

the Creditors' Committee determines that the aggregate distributions of Plan Currency and Trust

Interests would permit a distribution to be made pursuant to Section 17.2, 18.2 or 19.2 of the Plan, then the Debtors or the Reorganized Debtors, as the case may be, shall modify the Plan to provide for such distributions to be made. If the Special Litigation Trust is created, and in accordance with and pursuant to the terms of Article XXIII of the Plan, the Debtors or the Reorganized Debtors, as the case may be, shall transfer to the Special Litigation Trust (a) all of their right, title, and interest in the Special Litigation Trust Claims, and (b) subject to the provisions of the Post-Confirmation Allocation Formula, as defined below, such amounts of Cash as jointly determined by the Debtors or the Reorganized Debtors, as the case may be, and the Creditors' Committee as necessary to fund the operations of the Special Litigation Trust. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Special Litigation Trust Claims to the Special Litigation Trust shall not affect the mutuality of obligations, which may have otherwise existed prior to the effectuation of such transfer.

29. The Operating Trust Agreements are each approved in all respects. Stephen Forbes Cooper, LLC is approved as Operating Trustee and, if and only if one or more of the Operating Trusts are established pursuant to Section 24.1 of the Plan, as of the date that each applicable Operating Trust Agreement becomes effective, is so appointed and vested with the powers necessary and appropriate to enable the Operating Trustee of the Operating Trust so formed to carry out its responsibilities as defined in the Plan and the applicable Operating Trust Agreement. Upon the joint determination of the Debtors or the Reorganized Debtors, as the case may be, and, provided that the Creditors' Committee has not been dissolved in accordance with the provisions of Section 33.1 of the Plan, the Creditors' Committee, on or after the Confirmation Date, the Debtors or the Reorganized Debtors, as the case may be, on their own

behalf and on behalf of holders of Allowed Claims in Classes 3 through 180, 183 through 189 and 376 through 382 shall execute the respective Operating Trust Agreements and shall take all other steps necessary to establish the respective Operating Trusts. On such date, or as soon as practicable thereafter, including, without limitation, subject to appropriate or required governmental, agency or other consents, and in accordance with and pursuant to the terms of Section 24.4 of the Plan, if such trust is formed, the Debtors or the Reorganized Debtors, as the case may be, shall transfer to the respective Operating Trusts so formed all of their right, title, and interest in the assets subject to the Operating Trust Agreements. In the event that the one or more Operating Trusts is created, Stephen D. Bennett, Rick A. Harrington, James R. Latimer, III and John J. Ray, III are appointed as members of the PGE Trust Board, CrossCountry Trust Board and Prisma Trust Board, as the case may be, and vested with the powers necessary and appropriate to enable each of the aforementioned trust boards to carry out each of their respective responsibilities as defined in the Plan and each of the Operating Trust Agreements; provided, however, that pursuant to the Director Notice and unless otherwise expressly set forth, in the event that a replacement director is selected for Reorganized ENE, such selection shall be deemed to be applicable to the aforementioned trust boards.

30. The Remaining Asset Trust Agreements are approved in all respects. Stephen Forbes Cooper, LLC is approved as Remaining Asset Trustee and, if and only if the Remaining Asset Trusts are established pursuant to Section 25.1 of the Plan, as of the date that each of the Remaining Asset Trust Agreements become effective, is so appointed and vested with the powers necessary and appropriate to enable the Remaining Asset Trustee to carry out its responsibilities as defined in the Plan and the Remaining Asset Trust Agreements. If the Remaining Asset Trusts are established, Stephen D. Bennett, Rick A. Harrington, James R.

Latimer, III and John J. Ray, III are hereby appointed as members of the Remaining Asset Trust Board for each respective Remaining Asset Trust and vested with the powers necessary and appropriate to enable each of the aforementioned trust boards to carry out each of their respective responsibilities as defined in the Plan and each of the Remaining Asset Trust Agreements; provided, however, that, pursuant to the Director Notice and unless otherwise expressly set forth, in the event that a replacement director is selected for Reorganized ENE, such selection shall be deemed to be applicable to the aforementioned trust boards. Upon the joint determination of the Debtors or the Reorganized Debtors, as the case may be, and, provided that the Creditors' Committee has not been dissolved in accordance with the provisions of Section 33.1 of the Plan, the Creditors' Committee, on or after the Confirmation Date, the Debtors or the Reorganized Debtors, as the case may be, on their own behalf and on behalf of holders of Allowed Claims in Classes 3 through 180, 183 through 189 and 376 through 382 shall execute the respective Remaining Asset Trust Agreements and shall take all other steps necessary to establish the respective Remaining Asset Trusts. On such date, or as soon as practicable thereafter, including, without limitation, subject to appropriate or required governmental agency or other consents, and in accordance with and pursuant to the terms of Article XXV of the Plan, if such trust is formed, the Debtors shall transfer to the respective Remaining Asset Trusts all of their right, title and interest in the Remaining Assets.

31. The Preferred Equity Trust Agreement is approved in all respects. Stephen Forbes Cooper, LLC is approved as Preferred Equity Trustee and, as of the date that the Preferred Equity Trust Agreement becomes effective, is so appointed and vested with the powers necessary and appropriate to enable the Preferred Equity Trustee to carry out its responsibilities as defined in the Plan and the Preferred Equity Trust Agreement. On or after the Confirmation

Date, but prior to the Effective Date, the Debtors, on their own behalf and on behalf of holders of

Allowed Equity Interests in Class 383 shall execute the Preferred Equity Trust Agreement and

shall take all other steps necessary to establish the Preferred Equity Trust.  On such date of

execution, or as soon as practicable thereafter, including, without limitation, subject to

appropriate or required governmental, agency or other consents, and in accordance with and

pursuant to the terms of Article XXVI of the Plan, if such trust is formed, Reorganized ENE

shall issue to the Preferred Equity Trust the Exchanged Enron Preferred Stock subject to the

Preferred Equity Trust Agreement.  Notwithstanding anything contained herein or in the Plan to

the contrary, there shall be separate classes of Preferred Equity Trust Interests that (a) separately

reflect the distributions and other economic entitlements, and (b) maintain the following order of

priority with respect to the separate classes of Exchanged Preferred Equity Interests contributed:

(1) Series 1 Exchanged Preferred Stock and Series 2 Exchanged Preferred Stock on a *pari passu*

basis; (2) Series 3 Exchanged Preferred Stock; and (3) Series 4 Exchanged Preferred Stock.

       32.     The Common Equity Trust Agreement is approved in all respects.

Stephen Forbes Cooper, LLC is approved as Common Equity Trustee and, as of the date that the

Common Equity Trust Agreement becomes effective, is so appointed and vested with the powers

necessary and appropriate to enable the Common Equity Trustee to carry out its responsibilities

as defined in the Plan and the Common Equity Trust Agreement.  On or after the Confirmation

Date, but prior to the Effective Date, the Debtors, on their own behalf and on behalf of holders of

Allowed Enron Common Equity Interests in Class 384, shall execute the Common Equity Trust

Agreement and shall take all other steps necessary to establish the Common Equity Trust.  On

such date of execution, or as soon as practicable thereafter, including, without limitation, subject

to appropriate or required governmental, agency or other consents, and in accordance with and

pursuant to the terms of Article XXVII of the Plan, if such trust is formed, Reorganized ENE

shall issue to the Common Equity Trust the Exchanged Enron Common Stock subject to the

Common Equity Trust Agreement.

33.    The Reorganized Debtor Plan Administration Agreement is approved in

all respects.  Each officer, director, managing director, general counsel, associate general

counsel, partner, member and manager, as applicable, of each Reorganized Debtor is hereby

authorized to execute on behalf of such Reorganized Debtor, the Reorganized Debtor Plan

Administration Agreement (and with respect to Reorganized ENE, countersign each

accompanying Duty of Loyalty Agreement) without any further action or approval of any board

of directors, managing member or partner.  Stephen Forbes Cooper, LLC is approved as

Reorganized Debtor Plan Administrator and, on the Effective Date, is so appointed and vested

with the powers necessary and appropriate to enable the Reorganized Debtor Plan Administrator

to carry out its responsibilities as defined in the Plan and the Reorganized Debtor Plan

Administration Agreement.  The Reorganized Debtor Plan Administrator shall take all necessary

and appropriate actions to comply with the provisions of the Plan in the name of and on behalf of

the Reorganized Debtors.

34.    Stephen Forbes Cooper, LLC is approved as Disbursing Agent.  Except to

the extent that the responsibility for the same is vested in the Reorganized Debtor Plan

Administrator pursuant to the Reorganized Debtor Plan Administration Agreement, the

Disbursing Agent shall be empowered to (a) take all steps and execute all instruments and

documents necessary to effectuate the Plan, (b) make distributions contemplated by the Plan, (c)

comply with the Plan and the obligations thereunder, (d) file all tax returns and pay taxes in

connection with the reserves created pursuant to Article XVIII of the Plan, and (e) exercise such

other powers as may be vested in the Disbursing Agent pursuant to order of the Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

35.    The formation of the reserve for Disputed Claims provided for in Section 21.3 of the Plan (the "Disputed Claims Reserve"), the appointment of Stephen D. Bennett, Rick A. Harrington, James R. Latimer, III and John J. Ray, III as DCR Overseers and the use of the Guidelines for Disputed Claims Reserve and the Guidelines for the DCR Overseers, each as set forth in Schedule Y and Z, respectively, of the Plan Supplement, all in accordance with the applicable terms and conditions of the Plan, are each approved in their entirety; provided, however, that, pursuant to the Director Notice and unless otherwise expressly set forth, in the event that a replacement director is selected for Reorganized ENE, such selection shall be deemed to be applicable to the DCR Overseers.  On the Effective Date, the DCR Overseers shall be vested with the powers necessary and appropriate to enable the DCR Overseers to carry out their responsibilities as defined in the Plan, the Guidelines for Disputed Claims Reserve and the Guidelines for the DCR Overseers, and to oversee the Disputed Claims Reserve in accordance therewith.

36.    With respect to Allowed Priority Tax Claims, holders of such Allowed Priority Tax Claims shall be entitled to receive distributions as provided in Section 3.3 of the Plan.  In accordance therewith and with the Notice of Election of Option with Respect to Payment of Priority Tax Claims (Docket. No. 18775) exercised in writing prior to the commencement of the Confirmation Hearing, and subject to Articles XXI and XXXII of the Plan, the Debtors have elected to exercise their option to make such distributions to each holder

of an Allowed Priority Tax Claim in full, in Cash, on the Effective Date or following such later

date as any Priority Tax Claim shall become an Allowed Claim.

Discharge, Injunctions, Limited Releases, and Exculpations

              37.    Except as otherwise provided in the Plan, this Confirmation Order or such

other applicable order of the Court, on the latest to occur of (a) the Effective Date, (b) the entry

of a Final Order resolving all Claims in the Chapter 11 Cases, or (c) the final distribution made

to holders of Allowed Claims and Allowed Equity Interests in accordance with Article XXXII of

the Plan, all Claims against and Equity Interests in the Debtors and Debtors in Possession, shall

be discharged and released in full; provided, however, that the Court may, upon request by the

Reorganized Debtors, and notice and a hearing, enter an order setting forth that such Claims and

Equity Interests shall be deemed discharged and released on such earlier date as determined by

the Court; and, provided, further, that upon all distributions being made pursuant to the Plan, the

Debtors and the Reorganized Debtors, as the case may be, shall be deemed dissolved for all

purposes and the Reorganized Debtor Plan Administrator shall cause the Debtors and the

Reorganized Debtors, as the case may be, to take such action to effect such dissolution in

accordance with applicable state law.  All Persons and Entities are hereby precluded from

asserting against the Debtors, the Debtors in Possession, their successors or assigns, including,

without limitation, the Reorganized Debtors, or their respective assets, properties or interests in

property, any other or further Claims based upon any act or omission, transaction or other

activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the

facts or legal bases therefor were known or existed prior to the Confirmation Date, regardless of

whether a proof of Claim or Equity Interest was filed, whether the holder thereof voted to accept

or reject the Plan or whether the Claim or Equity Interest is an Allowed Claim or Allowed Equity

Interest.

38.     Except as otherwise expressly provided in the Plan, this Confirmation

Order or such other applicable order of the Court, all Persons or Entities who have held, hold or

may hold Claims or other debt or liability that is discharged or Equity Interests or other right of

equity interest that is terminated or cancelled pursuant to the Plan are permanently enjoined,

from and after the Effective Date, from (a) commencing or continuing in any manner any action

or other proceeding of any kind on any such Claim or other debt or liability or Equity Interest or

other right of equity interest that is terminated or cancelled pursuant to the Plan against the

Debtors, the Debtors in Possession or the Reorganized Debtors, the Debtors' estates or properties

or interests in properties of the Debtors or Reorganized Debtors; (b) the enforcement,

attachment, collection or recovery by any manner or means of any judgment, award, decree or

order against the Debtors, the Debtors in Possession or the Reorganized Debtors, the Debtors'

estates or properties or interests in properties of the Debtors, the Debtors in Possession or the

Reorganized Debtors; (c) creating, perfecting, or enforcing any encumbrance of any kind against

the Debtors, the Debtors in Possession or the Reorganized Debtors or against the property or

interests in property of the Debtors, the Debtors in Possession or the Reorganized Debtors; and

(d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of

the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of

setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the

Debtors in Possession or the Reorganized Debtors or against the property or interests in property

of the Debtors, the Debtors in Possession or the Reorganized Debtors, with respect to any such

Claim or other debt or liability that is discharged or Equity Interest or other right of equity

interest that is terminated or cancelled pursuant to the Plan; provided, however, that such

injunction shall not preclude the United States of America, any State or any of their respective

police or regulatory agencies from enforcing their police or regulatory powers; and provided,

further, that, except in connection with a properly filed proof of claim, the foregoing proviso

does not permit the United States of America, any State or any of their respective police or

regulatory agencies from obtaining any monetary recovery from the Debtors, the Debtors in

Possession or the Reorganized Debtors or their respective property or interests in property with

respect to any such Claim or other debt or liability that is discharged or Equity Interest or other

right of equity interest that is terminated or cancelled pursuant to the Plan, including, without

limitation, any monetary claim or penalty in furtherance of a police or regulatory power.  Such

injunction (y) shall extend to all successors of the Debtors and Debtors in Possession and the

Creditors' Committee and its members, and their respective properties and interests in property;

provided, however, that such injunction shall not extend to or protect members of the Creditors'

Committee and their respective properties and interests in property for actions based upon acts

outside the scope of service on the Creditors' Committee, and (z) is not intended, nor shall it be

construed, to extend to the assertion, the commencement or the prosecution of any claim or cause

of action against any present or former member of the Creditors' Committee and their respective

properties and interests in property arising from or relating to such member's pre-Petition Date

acts or omissions, including, without limitation, the Class Actions.

> 39.     None of the Debtors, the Reorganized Debtors, the Creditors' Committee,

the Employee Committee, the ENA Examiner (other than those functions defined by the

Investigative Orders), the Indenture Trustees, and any of their respective directors, officers,

employees, members, attorneys, consultants, advisors and agents (acting in such capacity), shall

have or incur any liability to any Entity for any act taken or omitted to be taken in connection

with and subsequent to the commencement of the Chapter 11 Cases, the formulation,

preparation, dissemination, implementation, confirmation or approval of the Plan or any

compromises or settlements contained therein, the Disclosure Statement related thereto or any

contract, instrument, release or other agreement or document provided for or contemplated in

connection with the consummation of the transactions set forth in the Plan; provided, however,

that the foregoing provisions of this paragraph shall not affect the liability of (a) any Entity that

otherwise would result from any such act or omission to the extent that such act or omission is

determined in a Final Order to have constituted gross negligence or willful misconduct,

including, without limitation, fraud and criminal misconduct; (b) State Street Bank and Trust

Company in its capacity as Independent Fiduciary appointed in accordance with the Court's

order, dated April 19, 2002 or (c) the professionals of the Debtors, the Reorganized Debtors, the

Creditors' Committee, the Employee Committee, the ENA Examiner or the Indenture Trustees to

their respective clients pursuant to DR 6-102 of the New York Code of Professional

Responsibility.  Any of the foregoing parties in all respects shall be entitled to rely upon the

advice of counsel with respect to their duties and responsibilities under the Plan.

      40.    Except as otherwise provided in the Plan, including, without limitation,

Articles XXII and XXIII of the Plan, or in any contract, instrument, release or other agreement

entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy

Code, the Reorganized Debtors shall retain sole and exclusive authority to enforce any claims,

rights or causes of action that the Debtors, the Debtors in Possession or their chapter 11 estates

may hold against any Entity, including any claims, rights or causes of action arising under

sections 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

41.     The Reorganized Debtors may, pursuant to applicable bankruptcy and nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature the Debtors or the Reorganized Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Debtors in Possession or the Reorganized Debtors of any such claims, rights and causes of action that the Debtors, Debtors in Possession or the Reorganized Debtors may possess against such holder; and provided, further, that nothing contained herein or in the Plan is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment.

42.     No claims of the Debtors' estates against their present and former officers, directors, employees, consultants and agents and arising from or relating to the period prior to the Initial Petition Date are released by the Plan.  As of the Effective Date, the Debtors and Debtors in Possession shall be deemed to have waived and released their present and former directors, officers, employees, consultants and agents who were directors, officers, employees consultants or agents, respectively, at any time during the Chapter 11 Cases, from any and all claims of the Debtors' estates arising from or relating to the period from and after the Initial Petition Date; provided, however, that, except as otherwise provided by prior or subsequent Final Order of the Court, this provision shall not operate as a waiver or release of (a) any Person (i) named or subsequently named as a defendant in any of the Class Actions, (ii) named or subsequently named as a defendant in any action commenced by or on behalf of the Debtors in

Possession, including any actions prosecuted by the Creditors' Committee and the Employee Committee, (iii) identified or subsequently identified as a wrongful actor in the "Report of Investigation by the Special Investigative Committee of the Board of Directors of Enron Corp.," dated February 1, 2002, (iv) identified or subsequently identified in a report by the Enron Examiner or the ENA Examiner as having engaged in acts of dishonesty or willful misconduct detrimental to the interests of the Debtors, or (v) adjudicated or subsequently adjudicated by a court of competent jurisdiction to have engaged in acts of dishonesty or willful misconduct detrimental to the interests of the Debtors or (b) any claim (i) with respect to any loan, advance or similar payment by the Debtors to any such person, (ii) with respect to any contractual obligation owed by such person to the Debtors, (iii) relating to such person's knowing fraud, or (iv) to the extent based upon or attributable to such person gaining in fact a personal profit to which such person was not legally entitled, including, without limitation, profits made from the purchase or sale of equity securities of the Debtors which are recoverable by the Debtors pursuant to section 16(b) of the Securities Exchange Act of 1934, as amended; and, provided, further, that the foregoing is not intended, nor shall it be construed, to release any of the Debtors' claims that may exist against the Debtors' directors and officers liability insurance.

43.     Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order in accordance with Section 42.17 of the Plan or other Final Order of the Court.

44.     Except as provided in the Plan, as of the Effective Date, all non-Debtor entities are permanently enjoined from commencing or continuing in any manner, any action or proceedings, whether directly, derivatively, on account of or respecting any claim, debt, right or

cause of action of the Debtors, the Debtors in Possession or the Reorganized Debtors which the

Debtors, the Debtors in Possession or the Reorganized Debtors, as the case may be, retain sole

and exclusive authority to pursue in accordance with Section 28.1 of the Plan or which has been

released pursuant to the Plan, including, without limitation, pursuant to Sections 2.1, 28.3 and

42.6 of the Plan; provided, however, that such injunction is not intended, nor shall it be

construed, (a) to the extent authorized or permitted by an order of the Court, to extend to the

ongoing prosecution of the Class Actions or (b) to apply to any proceeding not involving

property of any Debtor's estate that a non-Debtor Entity brings against another non-Debtor

Entity.

Executory Contracts and Unexpired Leases

45.    Pursuant to sections 365(a) and 1123 of the Bankruptcy Code, the

rejection, on the Confirmation Date, of all executory contracts and unexpired leases that (a) have

not been assumed pursuant to prior Court orders, (b) are not the subject of a pending motion to

assume, or (c) are not included in the Assumption Schedule filed on March 19, 2004, (Docket

No. 17054) as the same has been amended by notice from time to time (as amended, hereinafter

referred to collectively as the "Assumption Schedule"), is approved in all respects.

46.    Pursuant to sections 365(a) and 1123 of the Bankruptcy Code, the

assumption, as of the Effective Date, of the executory contracts and unexpired leases listed on

the Assumption Schedule, which are not the subject of a timely filed objection (including any

objection that may be timely filed in accordance with the terms of a notice of an amendment of

the Assumption Schedule), is approved in all respects in accordance with the noticed terms of the

Assumption Schedule.  The ability of the Debtors to assume, or assume and assign, any

executory contract or unexpired lease that is the subject of a timely-filed objection shall be addressed by the Court upon notice and a hearing.

47.    In accordance with Section 34.2 of the Plan, the Debtors in Possession may at any time during the period from the Confirmation Date, up to and including the Effective Date, amend the Assumption Schedule to delete any executory contracts or unexpired leases therefrom.

48.    The filing and service of the Plan and Assumption Schedule and the publication of notice of the entry of the Confirmation Order provide adequate notice of the assumption of executory contracts and unexpired leases that are assumed pursuant to Article XXXIV of the Plan.

49.    All counterparties to all executory contracts and unexpired leases of the Debtors assumed pursuant to Article XXXIV of the Plan and the Assumption Schedule have been provided with adequate assurance of future performance pursuant to section 365(f) of the Bankruptcy Code.

50.    Notwithstanding anything contained in the Plan to the contrary, all trading contracts between or among (a) two or more Debtors, or (b) a Debtor and any wholly-owned Affiliate shall be deemed for all purposes to have been rejected and otherwise terminated as of the Initial Petition Date, and the values and damages attributable thereto shall be calculated as of the Initial Petition Date.

51.    Any monetary amounts required as cure payments on each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or upon such other terms and dates as the parties to such executory contracts or

unexpired leases otherwise may agree.  If a dispute regarding (a) the amount of any cure

payment, (b) the ability of the Debtors or any assignee to provide "adequate assurance of future

performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or

lease to be assumed, or (c) any other matter pertaining to assumption arises, the cure payments

required by section 365(b)(1) of the Bankruptcy Code shall be subject to the jurisdiction of the

Court and made following the existence of a Final Order, obtained upon notice and a hearing,

resolving such dispute.

52.    Except with regard to executory contracts governed in accordance with the

provisions of Section 34.3 of the Plan, if the rejection of an executory contract or unexpired lease

by the Debtors in Possession under the Plan results in damages to the other party or parties to

such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof

of claim, shall be forever barred and shall not be enforceable against the Debtors, or its

properties or agents, successors, or assigns, unless a proof of claim is filed with the Court and

served upon attorneys for the Debtors on or before thirty (30) days after the latest to occur of (a)

the Confirmation Date, (b) the date of entry of an order by the Court authorizing rejection of a

particular executory contract or unexpired lease, or (c) the date of the Rejection Notice with

respect to a particular executory contract or unexpired lease.

53.    For purposes of the Plan, the obligations of the Debtors to indemnify and

reimburse its directors or officers that were directors or officers, respectively, on or prior to the

Petition Date, shall be treated as Section 510 Subordinated Claims.  Indemnification obligations

of the Debtors arising from services as officers and directors during the period from and after the

Initial Petition Date shall be Administrative Expense Claims to the extent previously authorized

by Final Order.

54.    On the Effective Date, (a) each of the (i) ECT I Trust Declarations, (ii) ECT II Trust Declarations, (iii) EPF I Partnership Agreement, and (iv) EPF II Partnership Agreement shall be deemed to be rejected, and (b) subject to the Debtors' obligations set forth in decretal paragraph 16 of the TOPRS Stipulation and in the Plan and this Confirmation Order, in full and final satisfaction of any rights, interests or Claims of ECT I, ECT II , EPF I, EPF II and holders of the TOPRS against any of the Debtors and their affiliates, ENE, as general partner of EPF I and EPF II, shall (i) waive any right of EPF I and EPF II to reinvest distributions made pursuant to the Plan, (ii) liquidate the Eligible Debt Securities, as defined in the EPF I Partnership Agreement and the EPF II Partnership Agreement, owned by EPF I and EPF II to Cash as soon as practicable following the Effective Date, and (iii) declare a distribution of all assets of EPF I and EPF II, including, without limitation, Cash, Plan Securities and Eligible Debt Securities, as defined in the EPF I Partnership Agreement and the EPF II Partnership Agreement, to ECT I and ECT II, respectively, which distribution shall be made to National City Bank, in its capacity as ECT I Property Trustee and ECT II Property Trustee.  Upon the earlier to occur of (i) this Confirmation Order becoming a Final Order, or (ii) the Effective Date, (a) all claims, causes of action or other challenges of any kind or nature which could be asserted by the Debtors, the Creditors' Committee, any trustee appointed in the Debtors' bankruptcy cases, or any creditor or party in interest in the Debtors' bankruptcy cases, or any of them, against or with respect to National City Bank, as Indenture Trustee, ECT I Property Trustee and ECT II Property Trustee, ECT I, ECT II, the TOPRS issues by either of them, EPF I, EPF II, the limited partnership interests issued by either of them, the ETS Debentures, the ENA Debentures or the Enron TOPRS Debentures, including, without limitation, substantive consolidation, piercing of the corporate veil, re-characterization of the TOPRS or the limited partnership interests in EPF I or

EPF II as preferred stock or any other equity interest of ENE or any of its affiliates, preference, fraudulent conveyance and other avoidance actions shall be deemed forever waived and released, and (b) none of the Debtors, the Creditors' Committee, any trustee or any creditor or party in interest in the Debtors' bankruptcy cases, or any of them, shall without National City Bank's prior written consent, which consent shall not be unreasonably withheld, (i) seek to change, remove or substitute any of the Enron TOPRS Debentures, the ETS Debentures, the ENA Debentures, the Eligible Securities or any other interest of any of ECT I, ECT II, EPF I or EPF II in any property, or (ii) otherwise seek to merge or consolidate any or all of ECT I, ECT II, EPF I, EPF II, ENE, ENA or ETS or in any manner change or otherwise affect the economic or other interests of National City Bank, as Indenture Trustee and Property Trustee, the holders of TOPRS, ECT I, ECT II, EPF I or EPF II, or any of them.

Title to Assets

55.     Except as otherwise provided in the Plan, including, without limitation, Section 42.2 of the Plan, on the Effective Date, title to all assets and properties encompassed by the Plan shall vest in the Reorganized Debtors and, to the extent created, the Remaining Asset Trust(s), the Litigation Trust and the Special Litigation Trust, as the case may be, free and clear of all Liens and in accordance with section 1141 of the Bankruptcy Code.  This Confirmation Order is a judicial determination of discharge of the liabilities of the Debtors and the Debtors in Possession except as provided in the Plan.  Notwithstanding the foregoing, the Debtors and the Reorganized Debtors, in their sole and absolute discretion, may (a) encumber all of the Debtors' estates' assets for the benefit of Creditors, or (b) transfer such assets to another Entity to secure the payment and performance of all obligations provided for in the Plan.

56.    Except to the extent subject to a valid and enforceable Lien, upon the Effective Date, all proceeds reserved pursuant to a Sale/Settlement Order and not subject to a dispute concerning the allocation thereof shall vest in the Reorganized Debtors, the Litigation Trust or the Special Litigation Trust, as the case may be, free and clear of all Liens and in accordance with section 1141 of the Bankruptcy Code and be subject to distribution in accordance with the provisions hereof; provided, however, that, notwithstanding the foregoing, the Debtors shall escrow Two Hundred Million Dollars ($200,000,000.00) to satisfy its obligations in accordance with the terms and provisions of the Standard Termination Order until the earlier to occur of (a) satisfaction of the obligations contained in the Standard Termination Order, and (b) entry of an order of the Court, upon notice to the PBGC, authorizing the release thereof.

57.    Notwithstanding the terms and conditions of any of the Sale/Settlement Orders, to the extent necessary to allocate the proceeds reserved pursuant to a Sale/Settlement Order, on or prior to the three (3) month anniversary of the Confirmation Date, the Debtors shall file one or more motions with the Court to determine the allocation of proceeds reserved pursuant to a Sale/Settlement Order.  Any such motion shall be deemed served upon the necessary parties if served in accordance with the Case Management Order.  Upon entry of a Final Order of the Court with respect to the allocation of such proceeds, and to the extent allocated to the Debtors, the Litigation Trust, the Special Litigation Trust, or any Enron Affiliate, as the case may be, all such proceeds shall vest in the Reorganized Debtors or such Enron Affiliate free and clear of all Liens and in accordance with section 1141 of the Bankruptcy Code and be subject to distribution in accordance with the provisions of the Plan and this Confirmation Order.

58.    Each of the transfers of property of the Debtors or Reorganized Debtors, as the case may be, pursuant to the Plan:  (a) are or shall be deemed to be legal, valid and effective transfers of property; (b) shall not constitute, or be construed to be, avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law; and (c) shall not subject the Debtors or the Reorganized Debtors, as the case may be, to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

Payment of Statutory Fees

59.    All fees payable pursuant to section 1930 of title 28 of the United States Code, shall be paid as and when due or otherwise pursuant to an agreement between one or more of the Reorganized Debtors and the United States Department of Justice, Office of the United States Trustee, until such time as a Chapter 11 Case for a Debtor shall be closed in accordance with the provisions of Section 42.17 of the Plan.

Retention of Jurisdiction

60.    In accordance with (and as limited by) Article XXXVIII of the Plan and section 1142 of the Bankruptcy Code, the Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:

(a)    to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan, and to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

34

(b)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(c)     to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors, the Litigation Trust or the Special Litigation Trust prior to or after the Effective Date;

(d)     to ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the Plan;

(e)     to hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim and Equity Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

(g)     to issue such orders in aide of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(i)     to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)     to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(k)     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)     to determine any other matters that may arise in connection with or that are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

(m)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)    to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(o)    to enter a final decree closing the Chapter 11 Cases;

provided, however, that the foregoing does not (1) expand the Court's subject matter jurisdiction beyond that allowed by applicable law, (2) impair the rights of an Entity to (i) invoke the jurisdiction of a court, commission or tribunal, including, without limitation, the Federal Energy Regulatory Commission, with respect to matters relating to a governmental unit's police and regulatory powers and (ii) contest the invocation of any such jurisdiction; provided, however, that the invocation of such jurisdiction, if granted, shall not extend to the allowance or priority of Claims or the enforcement of any money judgment against a Debtor or Reorganized Debtor, as the case may be, entered by such court, commission or tribunal, and (3) impair the rights of an Entity to (i) seek the withdrawal of the reference in accordance with 29 U.S.C. § 157(d) and (ii) contest any request for the withdrawal of reference in accordance with 28 U.S.C. § 157(d).

## GENERAL AUTHORIZATIONS

61.    The Debtors, Debtors in Possession and the Reorganized Debtors, as the case may be, are hereby authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code to:

(a)    Execute and deliver, and take such action as is necessary to effectuate the terms of, all instruments, agreements and documents

in substantially the form of such instruments, agreements or documents attached as exhibits to the Plan, the Plan Supplement or the Disclosure Statement, or to be filed with the Court on or before the Effective Date, including all annexes and exhibits attached to those exhibits to the Plan, the Plan Supplement or Disclosure Statement and any other documents delivered in connection with those exhibits; and

(b)     Issue, execute, deliver, file and record any documents, Court papers or pleadings, and to take any and all actions that are necessary or desirable to implement, effect or consummate the transactions contemplated by the Plan whether or not specifically referred to in the Plan or related documents, and without further application to or order of the Court.

62.     Without the need for further order or authorization of the Court, the Debtors and/or Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan.

## GLOBAL COMPROMISE MOTION

63.     Subject to the full paragraph on page six of the findings of fact and conclusions of law issued on July 15, 2004, the settlements and compromises embodied in the Plan and the Global Compromise Motion are approved for all Debtors.  Notwithstanding the exclusion of a Debtor from the Plan pursuant to Sections 39.1 or 42.14 of the Plan, such Debtor and any successor trustee or representative of the Estate shall be bound by the terms of the global compromise pursuant to the Global Compromise Motion.

## POST-CONFIRMATION ALLOCATION FORMULA

64.     The Motion of Debtors Pursuant to Section 363 of the Bankruptcy Code for Order Approving and Authorizing Post-Confirmation Allocation Formula for Overhead and

Expenses, dated March 24, 2004 (Docket No. 17283) (the "Overhead Allocation Motion")[4] is granted in full as to all Debtors. The Post-Confirmation Allocation Formula, for allocation, from and after the Confirmation Date, of shared overhead and other expenses among the Enron Entities, including the procedures related thereto, is approved. The Debtors are authorized to take all action necessary to fully implement and carry out the Post-Confirmation Allocation Formula as described in the Overhead Allocation Motion and authorized by this Order. Except as provided herein, all other provisions of the Court's orders, dated February 25, 2002, November 21, 2002 and November 25, 2002, with respect to the allocation of overhead and expenses, shall remain in full force and effect.

65. If an Enron Entity is unable to fund its Entity Reserve Amount, either in whole or in part, the unfunded portion will be reallocated to the first equity owner in the ownership chain of such Enron Entity (the "Funding Entity") with the ability to pay. To the extent the Funding Entity is a Debtor, (a) the funding of an Entity Reserve Amount by such Funding Entity on behalf of another Debtor will result in a Junior Reimbursement Claim (as defined in the Amended Cash Management Order) held by such Funding Entity against such Debtor, and (b) the funding of an Entity Reserve Amount by such Funding Entity on behalf of a non-Debtor will result in an Intercompany Loan (as defined in the Amended Cash Management Order) payable by such non-Debtor to such Funding Entity. To the extent the Funding Entity is a non-Debtor, (x) the funding of an Entity Reserve Amount by such Funding Entity on behalf of a Debtor will result in an Allowed Administrative Expense Claim held by such Funding Entity against such Debtor, and (y) the funding of an Entity Reserve Amount by such Funding Entity on

---

[4] Capitalized terms used in this section, if not defined herein or in the Plan, shall have the meanings ascribed to such terms in the Overhead Allocation Motion.

behalf of a non-Debtor will result in an intercompany receivable held by such Funding Entity against such non-Debtor.

66.     The Amended Cash Management Order is modified to the extent that the funding of an allocation obligation by a Funding Entity pursuant to this Order shall not be in violation or contravention of any provision of the Amended Cash Management Order, including, but not limited to the aggregate fair value tests, solvency tests and Intercompany Loan limits of paragraphs 5 and 6 of the Amended Cash Management Order.

67.     The Debtors and the Reorganized Debtors, in the exercise of their business judgment, may enact modifications to the Post- Confirmation Allocation Formula, without further Court approval; provided, however, the Debtors or the Reorganized Debtors, as applicable, obtain the agreement of (a) the Creditors' Committee and the ENA Examiner; or (b) if, in accordance with the Plan, the Creditors' Committee has been dissolved and/or the ENA Examiner's role has concluded, the board of directors of Reorganized ENE along with the remaining Creditors' Committee or the ENA Examiner, to the extent they then exist.

68.     During the post-Confirmation Date period, and solely to the extent the Creditors' Committee has not yet been dissolved and/or the ENA Examiner's role has not yet concluded in accordance with the Plan, the Creditors' Committee and the ENA Examiner will participate in a monitoring process of the application by the Debtors of the Post-Confirmation Allocation Formula.  Such monitoring process will permit the Creditors' Committee, to the extent it has not yet been dissolved, and the ENA Examiner, to the extent his role has not yet concluded, to, *inter alia*, (a) verify the accuracy of certain data, including, but not limited to, data associated with the GEAR, EAOR and other data produced in connection with the Post-Confirmation Allocation Formula, (b) oversee and evaluate the allocation of overhead and other

expenses, and the application of the allocation methodologies, (c) consult with the Debtors

regarding the Post-Confirmation Allocation Formula, and (d) review the reasonableness of any

other aspect of the Post-Confirmation Allocation Formula or its application.

    69. The Enron Entities may use funds held in restricted or escrow accounts by

the Enron Entities (the "Escrowed Funds") solely to satisfy overhead allocation of such Enron

Entity without further Court order, provided, that the following conditions apply:

    (a)  To the extent the Creditors' Committee has not yet been dissolved
and/or the ENA Examiner's role has not yet concluded in
accordance with the Plan, (i) the Debtors provide ten (10) days
prior written notice to the Creditors' Committee and the ENA
Examiner (1) setting forth (a) the name of the Enron Entity
proposing to use the Escrowed Funds, (b) the amount of Escrowed
Funds proposed to be released, and (c) an explanation of the need
for the Escrowed Funds, and (2) attaching supporting
documentation for the overhead or other expenses to be paid with
the Escrowed Funds (a "Notice"), and (ii) the Creditors'
Committee and the ENA Examiner do not object to the proposed
use of such Escrowed Funds within ten (10) days of receipt of the
Notice (an "Escrow Objection"). The Debtors shall schedule a
hearing on the proposed use of the Escrowed Funds if an Escrow
Objection is interposed and the Escrow Objection is not
consensually resolved.

    (b)  To the extent the Creditors' Committee has been dissolved and/or
the ENA Examiner's role has been concluded in accordance with
the Plan: (i) the Debtors provide thirty (30) days prior written
Notice to the board of directors of Reorganized ENE setting forth
the information described in the immediately preceding paragraph,
and (ii) the board of directors of Reorganized ENE does not raise
and Escrow Objection to the proposed use of such Escrowed Funds
within thirty (30) days of receipt of the Notice. In determining
whether to raise an Escrow Objection or approve the proposed use
of such Escrowed Funds, the Board of Directors of Reorganized
ENE, in their sole discretion, may request a hearing on such
matter.

## MISCELLANEOUS

70.    Each of the Objections not withdrawn prior to the entry of this Confirmation Order or resolved by written agreement or by oral agreement, stated and made a part of the record of the Confirmation Hearing, including, without limitation, those Objections interposed by parties whose standing was challenged as part of the confirmation process (which issue the Court need not have addressed due to the rulings set forth in the Findings and Conclusions and herein) is OVERRULED and DENIED.  All withdrawn objections are deemed withdrawn with prejudice.

71.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with Section 42.14 of the Plan, is valid and enforceable pursuant to its terms.

72.    The Montgomery County Litigation, and all claims and causes of action comprising the Montgomery County Litigation, shall be deemed to be, for all and any purposes whatsoever, Special Litigation Trust Claims.

73.    Pursuant to section 1123(b) of the Bankruptcy Code, the Litigation Trust and the Special Litigation Trust, to the extent created, shall be deemed to be successors to ENE for any and all purposes whatsoever, notwithstanding the transfer of the Litigation Trust Claims and the Special Litigation Trust Claims from ENE to the Litigation Trust and the Special Litigation Trust, respectively, which transfers shall (a) be deemed to have occurred and/or taken place for tax purposes only, and (b) shall not impair or result in the lapsing of such causes of action or claims, notwithstanding any applicable nonbankruptcy law prohibiting the assignment of pre-judgment tort claims, and shall not affect the validity or survival of such causes of actions or claims.

74.     Exhibit L to the Plan and Schedule S to the Plan Supplement represent the Debtors' position as of the date hereof and are indicative only of the types of Claims that may benefit from subordination and therefore do not set forth, in any manner whatsoever, a definitive list or catalog of the Claims that may benefit from subordination; accordingly, the rights of holders of Claims to assert the benefits of subordination in connection with the Plan or any distributions made pursuant to the terms thereof are preserved in all respects and are in no manner limited or restricted by Exhibit L to the Plan and/or Schedule S to the Plan Supplement. Consistent therewith, pursuant to an agreement among the Debtors, the Creditors' Committee and the ENA Examiner, (a) Schedule S to the Plan Supplement may not be the "final schedule," (b) Schedule S to the Plan Supplement may be amended or modified prior to the initial distribution pursuant to Section 32.1(a) of the Plan to add or remove certain claims entitled to the benefits of subordination, provided, however, that the Debtors may not amend or modify Schedule S in a manner that would violate the provisions of the Baupost Stipulation, including without limitation, the provisions of decretal paragraph 4 thereof, and (c) the Debtors shall file a final Schedule S (which may be identical to the schedule contained in existing Schedule S to the Plan Supplement) with the Court prior to making the initial distribution pursuant to Section 32.1(a) of the Plan, giving all parties (including the ENA Examiner, to the extent such role has not been terminated in accordance with the provisions of Section 33.4 of the Plan) an opportunity to be heard with respect to the final Schedule S on the grounds that certain claims should be included in or removed from such Schedule.

75.     Although not excluded from the Plan, EDF, a Debtor, is also the subject of insolvency proceedings in the Cayman Islands. (Stipulation And Agreed Order Establishing Procedures For Compensation And Reimbursement Of Expenses For Professionals Of Enron

Development Funding Limited And Its Joint Provisional Liquidators, dated June 26, 2003, Docket No. 11953). In light of the joint proceedings, until such time as the Cayman scheme of arrangement proceedings has been concluded, currently anticipated to be in August 2004, no distributions of assets held by or attributed to EDF will be made to Creditors holding Allowed Claims pursuant to the Plan.

76.     The Reorganized Debtors shall file and serve (a) no later than twenty (20) days following the Confirmation Date, unless extended for cause upon motion by the Debtors upon notice to the Creditors' Committee and the Creditors affected thereby, objections to Claims with regard to the Yosemite and Credit Linked Notes financing transaction, as described in the Disclosure Statement, (b) no later than fifty (50) days following the Confirmation Date, unless extended for cause upon motion by the Debtors upon notice to the Creditors' Committee and the Creditors affected thereby, objections to the twenty (20) largest proofs of Claim filed against ENA, and identified by the ENA Examiner in a list provided no later than the Confirmation Date, and (c) all objections to other Claims as soon as practicable, but, in each instance, not later than two hundred forty (240) days following the Confirmation Date or such later date as may be approved by the Court.

77.     All applications (collectively, the "Applications" and each an "Application") for final allowances of compensation and reimbursement of expenses pursuant to sections 328, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code shall be filed with the Court and served upon the parties listed below no later than October 31, 2004:

> Weil, Gotshal & Manges LLP
> Attorneys for the Debtors
> 767 Fifth Avenue
> New York, New York 10153
> Attention: Martin J. Bienenstock, Esq. and Brian S. Rosen, Esq.

Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, New York 10005
Attention: Luc A. Despins, Esq. and Susheel Kirpalani, Esq.

Reorganized Enron
1221 Lamar Street, Suite 1600
Houston, Texas 77010
Attention: General Counsel

The Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Attention: Mary Elizabeth Tom, Esq.

78.      A status conference will be held before the Court on December 16, 2004, at 10:00 a.m., in the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Courtroom 523, New York, New York 10004-1408, at which the Court will schedule a hearing (the "Final Fee Hearing") to consider the Applications for final allowance of compensation and reimbursement of expenses and related matters.

79.      Each Application shall comply with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and shall set forth, among other things, in reasonable detail, (a) the name and address of the applicant, (b) the nature of the professional or other services rendered and expenses for which reimbursement is requested for all periods from the date the particular applicant was retained through the Effective Date, (c) the amount of compensation and reimbursement of expenses requested, (d) whether any payments have been received on account and, if so, the amount or amounts thereof, and (e) the amounts of compensation and reimbursement of expenses previously allowed by the Court, if any.

80.     No applications shall be filed for compensation and reimbursement by professional persons for services rendered or expenses incurred on or after the Confirmation Date.  From and after the Confirmation Date, the Reorganized Debtors, the Reorganized Debtor Plan Administrator, the Litigation Trustee, the Special Litigation Trustee, the Remaining Asset Trustee, the Operating Trustees, the Preferred Equity Trustee, the Common Equity Trustee and the DCR Overseers shall, in the ordinary course of business and without the necessity for any approval by the Court, (a) retain such professionals, (including professionals previously retained by the Debtors and/or the Creditors' Committee) and (b) pay the reasonable professional fees and expenses incurred by the Debtors or the Reorganized Debtors, as the case may be, the Creditors' Committee and the ENA Examiner related to implementation and consummation of or consistent with the provisions of the Plan, including, without limitation, reasonable fees and expenses of the Indenture Trustees incurred in connection with the distributions to be made pursuant to the Plan. Disputes concerning such fees and expenses may be brought to the Court for resolution.

81.     Pursuant to section 503(b) of the Bankruptcy Code and Bankruptcy Rule 3003(c), and except as otherwise provided in the following decretal paragraph of this Confirmation Order, each Person or Entity that asserts an Administrative Expense Claim against one or more of the Debtors, that arose after the commencement of such Debtor's Chapter 11 Case, shall file and serve on the parties listed in decretal paragraph 77 hereof a request for payment of such administrative expense no later than 5:00 p.m. New York City Time on the later to occur of (a) September 30, 2004, or (b) the first (1st) Business Day sixty (60) days following the Effective Date (the "Administrative Expense Bar Date").

82.     The following Persons or Entities are not required to file Administrative Expense Claims by the Administrative Expense Bar Date:  (a) any Person or Entity that has

already filed an Administrative Expense Claim; (b) holders of Administrative Expense Claims previously allowed by order(s) of the Court; (c) the Debtors or any affiliates of the Debtors, individually or collectively, holding Claims against any of the other Debtors or their affiliates, individually or collectively; (d) except as otherwise set forth herein, any Person or Entity seeking allowance of final compensation or reimbursement of expenses for professional services rendered to the Debtors or in relation to these Chapter 11 Cases pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code; and (e) any administrative expenses that arise and are due and payable in the ordinary course of the Debtors' businesses, except with respect to those expenses that remain outstanding and unpaid by the Debtors beyond ordinary business terms or prior course of business dealings.

83.     Each Administrative Expense Claim, to be properly filed pursuant to this Confirmation Order, must (a) be written in the English language, (b) be denominated in lawful currency of the United States, (c) set forth the name of the specific Debtor against which such claim is asserted, and (d) otherwise comply with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

84.     Pursuant to Bankruptcy Rule 3003(c), any Person or Entity that is required to file an Administrative Expense Claim against a Debtor, in the form and manner specified by this Confirmation Order, and that fails to do so on or before the Administrative Expense Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against any of the Debtors (or filing a claim with respect thereto) and the Debtors and their estates' properties shall be forever discharged of and from any and all indebtedness or liability with respect to such Administrative Expense Claim, and such holder shall not be permitted to participate in any distribution in the Debtors' Chapter 11 Cases under the Plan or

otherwise on account of such Administrative Expense Claim or to receive any further notice regarding such Administrative Expense Claim.

85.    Notice of the Administrative Expense Bar Date, substantially in the form annexed to this Confirmation Order as Exhibit C (the "Effective Date Notice and Administrative Bar Date Notice"), which Effective Date Notice and Administrative Bar Date Notice is hereby approved in all respects, shall be deemed good, adequate and sufficient notice, if such Effective Date Notice and Administrative Bar Date Notice is (a) published as provided in the following decretal paragraph of this Confirmation Order, and (b) filed and served in accordance with the Case Management Order on or before the fifteenth (15th) Business Day after the Effective Date.

86.    The Debtors or the Reorganized Debtors shall cause the Effective Date Notice and Administrative Bar Date Notice to be published one time in each of the Houston Chronicle, the national editions of The Wall Street Journal and The New York Times, the Financial Times, and El Nuevo Dia no later than fifteen (15) Business Days after the Effective Date, which publication is hereby approved in all respects and which shall be deemed good, adequate and sufficient notice by publication.

87.    The Debtors or Reorganized Debtors, as the case may be, shall file and serve any objections to Administrative Expense Claims no later than 120 days following the Administrative Expense Bar Date, unless further extended by the Court.

88.    On or before the fifteenth (15th) Business Day after entry of this Confirmation Order, the Debtors shall (a) serve, in accordance with the Case Management Order, all creditors and other parties in interest, including, without limitation, parties to executory contracts and unexpired leases rejected or deemed rejected in accordance with the terms and conditions of the Plan and this Confirmation Order and known to the Debtors, notice of the entry

of this Confirmation Order in substantially the form annexed hereto as Exhibit D, and (b) publish notice of the entry of this Confirmation Order on one occasion in each of the <u>Houston Chronicle</u>, the national editions of <u>The Wall Street Journal</u> and <u>The New York Times</u>, the <u>Financial Times</u>, and <u>El Nuevo Dia</u>.

89.      In accordance with Local Bankruptcy Rule 3021-1, annexed hereto as Exhibit E is a proposed form of a Postconfirmation Order and Notice, to be filed and served by the Court upon entry of the Confirmation Order.  The Debtors will comply with Local Bankruptcy Rule 3021-1 and the terms of the proposed Postconfirmation Order and Notice.

90.      To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in the Confirmation Order shall govern.

91.      The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent.

92.      The determinations, finding, judgments, decrees and orders set forth or incorporated herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

93.      This Confirmation Order is a final order and the period in which an appeal

may be timely filed shall commence upon the entry thereof.


Dated:  New York, New York
            July 15, 2004


                        _s/ Arthur J. Gonzalez_____
                        UNITED STATES BANKRUPTCY JUDGE