# **EXHIBIT 21**

                                                                1

1

2
    UNITED STATES BANKRUPTCY COURT
3   SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x
4   In re
                                    Case No.
5                                   01-16034
    ENRON CORP., et al,             *SEE BELOW
6
                Debtors.
7   ------------------------------x
                October 20, 2005
8               10:05 a.m.

9               United States Custom House
                One Bowling Green
10              New York, New York   10004

11      DIGITALLY RECORDED PROCEEDINGS
           (Proceedings - Entire Day)
12
    10:01 01-16034 ENRON CORP., ET AL
13  Debtors' objection to certain proofs of claim
    filed in connection with the Brazos Financing
14  Structure.

15  10:10 01-16034 ENRON CORP., ET AL
    Motion by Debtors Portland General Holdings,
16  Inc. and Portland Transition Company, Inc.
    exhibit chapter 11 cases.
17
    10:20 01-16034 ENRON CORP., ET AL
18  Debtors' sixth omnibus motion to deem
    schedules amended to modify certain scheduled
19  claims.

20  B E F O R E:

21      THE HONORABLE ARTHUR J. GONZALEZ
        United States Bankruptcy Judge
22

23        DEBORAH HUNTSMAN, Court Reporter
          198 Broadway, Suite 903
24        New York, New York   10038
          (212) 608-9053    (917) 723-9898
25

```
 1                  Proceedings
 2    form of Order.
 3              JUDGE GONZALEZ:  Does anyone else
 4    wish to be heard?
 5              (Whereupon, no response was heard.)
 6              JUDGE GONZALEZ:  No further comment
 7    being heard, based upon the pleadings as
 8    filed and the representations made on the
 9    record, I will grant the relief requested.
10    You may hand up the Order.
11              MS. MAYER:  Thank you, Your Honor.
12              JUDGE GONZALEZ:  The next matter we
13    have listed is a scheduling conference re
14    Objection to Notice of Presentment of Order
15    Approving Amended Schedule S to Plan
16    Supplement.
17              MS. MAYER:  Yes, Your Honor.
18    Sylvia Mayer, again, on behalf of the
19    Reorganized Debtors.
20              Your Honor, the Reorganized Debtors
21    filed an amended version of Schedule S under
22    Notice of Presentment, and an Objection was
23    filed by Baupost/Abrams.
24              Under the confirmed Plan, subject
25    to the ultimate allowance of the claims,
```

20

```
 1                    Proceedings
 2   certain claims are entitled to the benefit of
 3   contractual subordination provisions in four
 4   pre-petition indentures.  Exhibit L to the
 5   Plan identified the four pre-petition
 6   indentures and set forth the relevant
 7   provisions in each of the indentures that
 8   define the Senior Indebtedness for purposes
 9   of benefiting from the contractual
10   subordination provisions.
11             The four indentures are the 1987
12   Indenture, the TOPRS Indentures, and two
13   indentures referred to as the "MIPS,"
14   M-I-P-S.  Schedule S to the Plan Supplement
15   set forth generally the types of claims
16   benefiting from contractual subordination and
17   contained a reservation by the Debtors for
18   the right to amend or modify the schedule.
19             On July 29th, the Reorganized
20   Debtors filed their Amended Schedule S,
21   setting forth in greater detail the claims
22   benefiting from contractual subordination, as
23   well as adding and removing certain claims
24   from the list.
25             One Objection was filed to the
```

```
 1                    Proceedings
 2    Amended Schedule S by Baupost/Abrams.  They
 3    filed the sole Objection.
 4              In summary, their Objection seeks
 5    to remove from Schedule S with respect to the
 6    1987 Indenture Letter of Credit Claims and
 7    certain claims that they refer to as
 8    "Intercompany Claims," with respect to the
 9    TOPRS Indentures, Letter of Credit Claims and
10    certain claims that they deem to be
11    Intercompany Claims, and with respect to the
12    two MIPS Indentures, there are certain claims
13    that Baupost/Abrams deems to be Intercompany
14    Claims.
15              Several Creditors with interest in
16    the letter of credit or Intercompany Claims
17    have responded to Baupost's Objection and
18    assert positions contrary to Baupost's
19    interpretation of these provisions.
20              From the Reorganized Debtors'
21    perspective, this is really an intercreditor
22    dispute.  The same amount of money will go
23    out of the estate.  It doesn't impact on the
24    funds that are available for distribution.
25    It simply impacts on whom we make the
```

```
 1                  Proceedings
 2   distributions to with respect to the
 3   contractual subordination provisions.
 4            Depending on the outcome of the
 5   issues, some of the issues that are raised by
 6   Baupost may affect claims that were not
 7   identified by Baupost in their Objection.  So
 8   the Reorganized Debtors have reserved their
 9   rights to further modify Schedule S,
10   depending upon the Court's ruling, but
11   otherwise the Reorganized Debtors are
12   effectively neutral as to these issues that
13   are essentially an intercreditor dispute.
14            JUDGE GONZALEZ:  All right.  Thank
15   you.
16            I assume I will then hear first
17   from Baupost?
18            MR. WINSTON:  Good morning, Your
19   Honor.  Eric Winston of Stutman Treister &
20   Glatt on behalf of the Baupost Group and
21   Abrams Capital, holders of a substantial
22   number of Enron unsecured claims.
23            As Ms. Mayer pointed out, we were
24   the only Objectors to Schedule S.  Our
25   objection focused on --
```

```
 1                  Proceedings
 2   capable of more than one interpretation.
 3             If Your Honor doesn't have any
 4   further questions, let me go on to the TOPRS
 5   Indentures.  For purposes of Intercompany
 6   Claims, the definition of "Senior
 7   Indebtedness" in the TOPRS Indentures turns
 8   on two principles.  The first is the
 9   indebtedness has to be evidenced by notes,
10   bonds, debentures, or other securities.  This
11   definition is actually certainly different
12   than the definitions used in 1987 Indenture
13   or the two Loan Agreements and it is
14   certainly, at least in Baupost/Abrams' view,
15   more limiting, because it requires evidence
16   of a Note/Bond Debenture and it has "or other
17   security."  The 1987 Indenture uses "other
18   instruments" and, of course, the Loan
19   Agreements don't have anything like that.
20             Then the other key aspect, and
21   which is why we think the Enron Finance
22   Claims and the Cherokee Claims have to come
23   off the list, is the indebtedness has to be
24   sold by Enron.  This is somewhat of a curious
25   definition.  I don't know if I have ever seen
```

```
 1                    Proceedings
 2   it in any other indenture.  It is certainly
 3   not in the 1987 Indenture, but it is the
 4   language that is used in the TOPRS
 5   Indentures.
 6              None of the Intercompany Claims for
 7   which we have objected that are remaining --
 8   the Enron Finance Claims and the Cherokee
 9   Claims -- are ones that were sold by Enron.
10   Contrast that to the claims of Enron Equity
11   Corporation.  We had initially objected to
12   it, but after it was demonstrated to Baupost
13   and Abrams that these particular claims were,
14   in fact, sold by Enron, there was a warrant
15   to purchase these notes that was held by
16   Enron Equity Corporation.  That is nothing
17   like that with respect to the Enron Finance
18   Claims or the Cherokee Claims.  This
19   language, we submit, is unambiguous and no
20   other party with respect to the Intercompany
21   Claims has disputed the terms as ambiguous
22   with respect to what is meant by "sold by."
23              I have one other point to add, by
24   using the terms "notes, bonds, debentures, or
25   other securities sold by Enron," it suggests
```