# APPELLEES' APPENDIX

# TAB E

1

2

UNITED STATES BANKRUPTCY COURT
3   SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -x
4   In re

                                    Case No.
5                                   01-16034
    ENRON CORP., et al,            *SEE BELOW
6
                        Debtors.
7   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                    October 20, 2005
8                   10:05 a.m.

9                   United States Custom House
                    One Bowling Green
10                  New York, New York    10004

11          DIGITALLY RECORDED PROCEEDINGS
              (Proceedings - Entire Day)
12

13  10:01 01-16034 ENRON CORP., ET AL
    Debtors' objection to certain proofs of claim
14  filed in connection with the Brazos Financing
    Structure.

15  10:10 01-16034 ENRON CORP., ET AL
    Motion by Debtors Portland General Holdings,
16  Inc. and Portland Transition Company, Inc.
    exhibit chapter 11 cases.
17

18  10:20 01-16034 ENRON CORP., ET AL
    Debtors' sixth omnibus motion to deem
19  schedules amended to modify certain scheduled
    claims.

20  B E F O R E:

21     THE HONORABLE ARTHUR J. GONZALEZ
       United States Bankruptcy Judge
22

23        DEBORAH HUNTSMAN, Court Reporter
          198 Broadway, Suite 903
24        New York, New York    10038
          (212) 608-9053    (917) 723-9898
25

2

1

2    Calendar:   (continued)

3    10:25 01-16034 ENRON CORP., ET AL

4    Scheduling conference re Objection to Notice
     of Presentment of Order Approving Amended
5    Schedule S to Plan Supplement.

6    Objections filed.

7    11:50 01-16034 ENRON CORP., ET AL
     Motions filed by the Debtors for approval of
8    Settlement Agreements between Enron Energy
     Services, Inc., Enron North America Corp.,
9    and Clinton Energy Management Services with
     the following counterparties:
10
     USL Parallel Products of California;
11   Developers Funding Company; Royster Clark,
     Inc.; 1260 BB Property LLC; Eldona Corp.,
12   W.W. Henry Company; Grand Mandarin; King
     Manor Care Center; Campus Manor Apartments;
13   Madera Cleaners & Laundry, Inc.; Coin Op.
     Laundry Milpitas; Renewal Housing Corp. and
14   SCA Packaging North America, Inc.

15   11:55 01-16034 ENRON CORP., ET AL
     Motion by Debtors for approval of settlement
16   agreement by and among the Enron Parties, the
     Federal Energy Regulatory Commission's Office
17   of Market Oversight and Investigations, The
     California Parties, and the additional
18   claimants.

19   11:25 01-16034 ENRON CORP., ET AL
     (03-93172) Enron Corp. v. Granite
20   Construction Co.:
     Hearing re request for stay of discovery.
21
     11:45 01-16034 ENRON CORP., ET AL
22   Debtors' objection to proof of claim number
     25267 filed by Exodus Communications
23   Australia PTY Limited.

24

25

3

1

2    <u>Calendar</u>:   (continued)

3    12:10 01-16034 ENRON CORP., ET AL
     Third omnibus motion filed by the Debtors for
4    an order estimating certain contingent or
     unliquidated claims for purposes of
5    establishing reserves.

6    12:20 01-16034 ENRON CORP., ET AL
     Debtors' Ninety-Second Omnibus Objection to
7    proofs of claim with respect to claim no.
     25077 filed by Fireman's Fund Insurance
8    Company.

9    Response filed.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1

2    A P P E A R A N C E S:

3        WEIL, GOTSHAL & MANGES LLP
         Attorneys for Reorganized Debtors
4            767 Fifth Avenue
             New York, New York    10153
5
         BY:  BRIAN ROSEN, ESQ.
6             SYLVIA ANN MAYER, ESQ.
                  -and-
7             1300 Eye Street, N.W.
              Suite 900
8             Washington, D.C.    20005

9        BY:  JOHN H. THOMPSON, ESQ.

10       CADWALADER, WICKERSHAM & TAFT LLP
         Special Counsel for Reorganized
11       Debtors
             One World Financial Center
12           New York, New York    10281

13       BY:  EDWARD SMITH, ESQ.

14       TOGUT, SEGAL & SEGAL LLP
         Co-Counsel for Plaintiffs and Reorganized
15       Debtors
             One Penn Plaza
16           New York, New York    10119

17       BY:  NEIL BERGER, ESQ.

18       MILBANK, TWEED, HADLEY & McCLOY LLP
         Attorneys for Reorganized Enron Corp.
19           1 Chase Manhattan Plaza
             New York, New York    10005
20
         BY:  JAMES MacINNIS, ESQ.
21
         KRAMER LEVIN NAFTALIS & FRANKEL LLP
22       Attorneys for the Choctaw/Zephryus Holders
             1177 Avenue of the Americas
23           New York, New York  10036

24       BY:  AMY D. CATON, ESQ.

25

1

2    A P P E A R A N C E S:   (continued)

3        STUTMAN TREISTER & GLATT
         Attorneys for Baupost Group and Abrams
4        Capital
                 1901 Avenue of the Stars
5                Twelfth Floor
                 Los Angeles, California    90067
6
         BY:   ERIC WINSTON, ESQ.
7
         STROOCK & STROOCK & LAVAN LLP
8        Attorneys for Bayerische Hypo-Und
         Vereinsbank AG
9                180 Maiden Lane
                 New York, New York    10038
10
         BY:   ARLENE G. KRIEGER  ESQ.
11
         KELLEY DRYE & WARREN LLP
12       Attorneys for JP Morgan Chase
                 101 Park Avenue
13               New York, New York    10178

14       BY:   SARAH I. REID, ESQ.

15       DEBEVOISE & PLIMPTON LLP
         Attorneys for John Hancock
16               919 Third Avenue
                 New York, New York    10022
17
         BY:   MICHAEL E. WILES, ESQ.
18
         PAUL, WEISS, RIFKIND, WHARTON & GARRISON
19       LLP
         Attorneys for CitiGroup
20               1285 Avenue of the Americas
                 New York, New York    10019
21
         BY:   ERICA WEINBERGER, ESQ.
22                               (via telephone)

23

24

25

1

2  A P P E A R A N C E S:  (continued)

3    STATE OF CALIFORNIA
     OFFICE OF ATTORNEY GENERAL
4    Attorneys for Department of Water
     Resources
5         1300 I Street
          Sacramento, California   95814
6
     BY:   IRENE TAMURA, ESQ.
7                          (via telephone)

8    STATE OF WASHINGTON
     OFFICE OF ATTORNEY GENERAL
9    ANTITRUST DIVISION
     Attorneys for State of Washington
10        900 4th Avenue, Suite 2000
          Seattle, Washington   98164
11
     BY:   BRADY JOHNSON, ESQ.
12                         (via telephone)

13   OREGON DEPARTMENT OF JUSTICE
     Attorneys for State of Oregon
14        1515 S.W. 5th Avenue, Suite 410
          Portland, Oregon   97201
15
     BY:   SUSAN EGNOR, ESQ.
16                         (via telephone)

17   FELDERSTEIN FITZGERALD WILLOUGHBY &
     PASCUZZI LLP
18   Attorneys for Attorney General of the
     State of California
19        400 Capitol Mall, Suite 1450
          Sacramento, California   95814
20
     BY:   PAUL PASCUZZI, ESQ.
21                         (via telephone)

22

23

24

25

1

2    A P P E A R A N C E S:   (continued)

3

4    NOSSAMAN GUTHNER KNOX & ELIOTT
     Attorneys for San Diego Gas & Electric
5         445 South Figueroa Street
          Los Angeles, California   90071

6    BY:  ALLAN ICKOWITZ, ESQ.
                           (via telephone)
7

8    MOUND COTTON WOLLAN & GREENGRASS
     Attorneys for Defendant Granite
     Construction Company
9         One Battery Park Plaza
          New York, New York   10004
10

11   BY:  SANJIT S. SHAH, ESQ.

12   PAUL, WEISS, RIFKIND, WHARTON & GARRISON
     LLP
     Attorneys for CitiGroup
13        1285 Avenue of the Americas
          New York, New York   10019
14

15   BY:  ERICA WEINBERGER, ESQ.
                           (via telephone)

16   SONNENSCHEIN NATH & ROSENTHAL LLP
     Attorneys for Fireman's Fund
17        1221 Avenue of the Americas
          New York, New York   10020
18

19   BY:  D. FARRINGTON YATES, ESQ.
                    -and-
          DAPHNEE SURPRIS, ESQ.
20

21

22

23

24

25

```
 1                    Proceedings
 2    form of Order.
 3              JUDGE GONZALEZ:  Does anyone else
 4    wish to be heard?
 5              (Whereupon, no response was heard.)
 6              JUDGE GONZALEZ:  No further comment
 7    being heard, based upon the pleadings as
 8    filed and the representations made on the
 9    record, I will grant the relief requested.
10    You may hand up the Order.
11              MS. MAYER:  Thank you, Your Honor.
12              JUDGE GONZALEZ:  The next matter we
13    have listed is a scheduling conference re
14    Objection to Notice of Presentment of Order
15    Approving Amended Schedule S to Plan
16    Supplement.
17              MS. MAYER:  Yes, Your Honor.
18    Sylvia Mayer, again, on behalf of the
19    Reorganized Debtors.
20              Your Honor, the Reorganized Debtors
21    filed an amended version of Schedule S under
22    Notice of Presentment, and an Objection was
23    filed by Baupost/Abrams.
24              Under the confirmed Plan, subject
25    to the ultimate allowance of the claims,
```

```
 1                    Proceedings
 2    certain claims are entitled to the benefit of
 3    contractual subordination provisions in four
 4    pre-petition indentures.  Exhibit L to the
 5    Plan identified the four pre-petition
 6    indentures and set forth the relevant
 7    provisions in each of the indentures that
 8    define the Senior Indebtedness for purposes
 9    of benefiting from the contractual
10    subordination provisions.
11              The four indentures are the 1987
12    Indenture, the TOPRS Indentures, and two
13    indentures referred to as the "MIPS,"
14    M-I-P-S.  Schedule S to the Plan Supplement
15    set forth generally the types of claims
16    benefiting from contractual subordination and
17    contained a reservation by the Debtors for
18    the right to amend or modify the schedule.
19              On July 29th, the Reorganized
20    Debtors filed their Amended Schedule S,
21    setting forth in greater detail the claims
22    benefiting from contractual subordination, as
23    well as adding and removing certain claims
24    from the list.
25              One Objection was filed to the
```

```
1                    Proceedings
2    Amended Schedule S by Baupost/Abrams.  They
3    filed the sole Objection.
4              In summary, their Objection seeks
5    to remove from Schedule S with respect to the
6    1987 Indenture Letter of Credit Claims and
7    certain claims that they refer to as
8    "Intercompany Claims," with respect to the
9    TOPRS Indentures, Letter of Credit Claims and
10   certain claims that they deem to be
11   Intercompany Claims, and with respect to the
12   two MIPS Indentures, there are certain claims
13   that Baupost/Abrams deems to be Intercompany
14   Claims.
15             Several Creditors with interest in
16   the letter of credit or Intercompany Claims
17   have responded to Baupost's Objection and
18   assert positions contrary to Baupost's
19   interpretation of these provisions.
20             From the Reorganized Debtors'
21   perspective, this is really an intercreditor
22   dispute.  The same amount of money will go
23   out of the estate.  It doesn't impact on the
24   funds that are available for distribution.
25   It simply impacts on whom we make the
```

```
 1                   Proceedings
 2     distributions to with respect to the
 3     contractual subordination provisions.
 4                   Depending on the outcome of the
 5     issues, some of the issues that are raised by
 6     Baupost may affect claims that were not
 7     identified by Baupost in their Objection.  So
 8     the Reorganized Debtors have reserved their
 9     rights to further modify Schedule S,
10     depending upon the Court's ruling, but
11     otherwise the Reorganized Debtors are
12     effectively neutral as to these issues that
13     are essentially an intercreditor dispute.
14                   JUDGE GONZALEZ:  All right.  Thank
15     you.
16                   I assume I will then hear first
17     from Baupost?
18                   MR. WINSTON:  Good morning, Your
19     Honor.  Eric Winston of Stutman Treister &
20     Glatt on behalf of the Baupost Group and
21     Abrams Capital, holders of a substantial
22     number of Enron unsecured claims.
23                   As Ms. Mayer pointed out, we were
24     the only Objectors to Schedule S.  Our
25     objection focused on --
```

1                    Proceedings

2              JUDGE GONZALEZ:  Would you speak

3    louder to make sure the phone is picking up

4    what you are saying.

5              MR. WINSTON:  Sure, Your Honor.

6    Our Objection focused on two types of claims.

7    The first type of claim was a claim that in

8    Baupost/Abrams' view was a claim of an

9    affiliate of Enron against Enron.  The second

10   type of claim was a claim arising from an

11   obligation of Enron to reimburse issuers of

12   letters of credit.

13              There are some of the claims that

14   we have identified, as not belonging on

15   Schedule S, for whom no responses have been

16   received.  Baupost/Abrams submits that, at

17   least with respect to those claimants, they

18   have not carried their burden of proving that

19   they are entitled to benefit from the

20   contractual subordination provisions of the

21   three types of indenture that Debtors'

22   counsel pointed out.

23              With respect to the category of

24   Intercompany Claims, the only claimant that

25   did not respond were the holders of the

1                      Proceedings

2    Yosemite Claims.  Your Honor, notwithstanding

3    the fact that they did not respond, on Monday

4    we served a notice of withdrawal of our

5    Objections to the Yosemite Claims with

6    respect to the 1987 Indenture and with

7    respect to the two MIPS Loan Agreements.

8    Because of the problems with ECF on Monday

9    and Tuesday, I am not sure if it ever got

10   filed, but we do know a courtesy copy went to

11   the Court.  So, hopefully, Your Honor has

12   received it and we wanted to make the record

13   clear.  Our Objection, however, still stands

14   against the Yosemite Claims with respect to

15   the TOPRS Indentures.

16             With respect to the Letter of

17   Credit Claims, the following entities did not

18   respond:  Toronto Dominion, Australian and

19   New Zealand Banking, Banco Nazionale Intessa

20   BCI, Banco DeRoma and Unicredito.  American

21   Express did file a response that was late,

22   but for purposes of this argument, we are

23   going to treat them as if they have responded

24   on time.

25             I have just one other point to

1                    Proceedings

2    make, before going into the merits of the

3    arguments.  I don't think it is disputed that

4    this dispute is going to turn on the

5    interpretation of contractual law under

6    applicable state laws, and there are only two

7    principles of law that I think need to be

8    highlighted.

9              The first one is assuming that the

10   Court determines that the provisions are

11   ambiguous, the Court has to apply it by

12   meaning.  If the Court determines that any

13   provisions are ambiguous, the parties will be

14   entitled to submit parol evidence to support

15   their conflicting interpretations.  But the

16   second principle is that no matter what

17   happens, all of the claimants that are

18   seeking to benefit from contractual

19   subordinations carry a heavy burden of

20   proving it.  So at the end of the day, it is

21   going to be their burden to show that they

22   are entitled to it.

23              I am not going to repeat all of the

24   arguments raised in the papers, but I thought

25   it would be helpful to break it down as

1              Proceedings

2   follows.  I am going to start with the

3   Intercompany Claims with the 1987 Indenture,

4   and then I am going to go to the two MIPS

5   Loan Agreements, and then follow up with the

6   TOPRS Indentures, and then I would turn to

7   the arguments with respect to the Letter of

8   Credit Claims.

9              With respect to the 1987 Indenture,

10   the entire dispute turns on whether or not

11   the claim is held by a "Subsidiary," as that

12   term is defined in the 1987 Indenture.  In

13   summary, in order to be a Subsidiary under

14   that indenture, Enron must either directly or

15   indirectly own all of the voting stock of

16   that particular entity, and then the only

17   other issue is whether or not the Subsidiary

18   qualifies as a corporation, as that term is

19   used in the 1987 Indenture.

20              As Baupost and Abrams pointed out

21   in their papers, the term "corporation" is

22   not defined in the indenture, and there is no

23   evidence to indicate that the intent was to

24   limit it to literally corporations, as

25   opposed to LLCs.  Just to note, Bankruptcy

1                    Proceedings

2    Code Section 1019 does define "corporation"

3    to include LLCs.  So it is not unreasonable

4    to think that the undefined term

5    "corporation" in the 1987 Indenture really

6    meant things like corporations, LLCs, and

7    similar business entities.

8              As it currently stands today, the

9    only Intercompany Claim that is objected to

10   with respect to the 1987 Indenture is the

11   claims held by Enron Finance VOF.  As

12   JPMorgan pointed out in their Objection,

13   Enron Finance is an LLCs.  So for purposes of

14   the 1987 Indenture, Baupost/Abrams submits it

15   qualifies.

16             The key question for Enron Finance,

17   however, is:  did Enron have voting control

18   of the entity at the relevant times?  As

19   JPMorgan points out and we concede, at the

20   Petition Date not all of the stock for which

21   voting power was attributed was in the hands

22   of Enron.  Zephyrus and the entities

23   controlling Zephyrus had preferred interests

24   in Enron Finance for which there was voting

25   control.

```
 1               Proceedings
 2               However, as part of the
 3    Choctaw/Zephyrus settlement -- and this is
 4    unique to Zephyrus and not what occurred with
 5    Cherokee -- the membership interests held by
 6    Zephyrus in Enron Finance were redeemed by
 7    Enron and thereafter cancelled.  So at the
 8    moment of that settlement, which occurred
 9    prior to the Effective Date of the Plan, all
10    of the voting control in Enron Finance was
11    held by Enron either directly or indirectly.
12               So for purposes of the 1987
13    Indenture, we believe that at the moment of
14    the Effective Date, which we believe is what
15    counts for purposes of distributions to
16    holders of subordinated notes which are
17    upstream to holders of Senior Indebtedness
18    under the 1987 Indenture, Enron Finance
19    counts as a Subsidiary.
20               Assuming I am wrong -- which I
21    don't believe I am, but assuming I am
22    wrong -- one of the two claims held by Enron
23    Finance is actually a claim assigned to Enron
24    Finance by an entity known as ECIC.  ECIC is
25    clearly a corporation.  I don't think there
```

1              Proceedings

2    is any dispute about that.  There is no

3    evidence to indicate that its voting power

4    was ever held by anyone other than Enron.

5    Neither Enron Finance nor the assignees of

6    claims that were once held by Enron Finance

7    can have rights superior to those of ECIC for

8    purposes of determining contractual

9    subordination benefits.

10              So Baupost/Abrams submits that the

11   Enron Finance claims listed on Schedule S

12   with respect to the 1987 Indenture should be

13   taken off.

14              Unless Your Honor has any

15   questions, let me turn to the 1993 and 1994

16   Loan Agreements.  These two Loan Agreements

17   have substantially the same definition of

18   "Senior Indebtedness."  This definition

19   states that all indebtedness of Enron,

20   whether outstanding on the date of the Loan

21   Agreements or thereafter created, incurred,

22   or assumed which is for money borrowed or

23   evidenced by a note or similar instrument

24   given in connection with the acquisition of

25   any business, property, or assets that is

```
 1                  Proceedings
 2   counted for Senior Indebtedness.
 3                  Unlike either the 1987 Indenture or
 4   the TOPRS Indentures, the term "indebtedness"
 5   is not defined in any meaningful way.
 6   Actually, let me step back.  The term
 7   "indebtedness" is not defined as it was
 8   defined in the 1987 Indenture, and
 9   indebtedness is not defined in the TOPRS
10   Indentures.  Unlike the 1987 Indenture or the
11   TOPRS Indentures, there are no express
12   inclusions or exclusions.  All we have is the
13   words in front of us, "all indebtedness,"
14   which is for money borrowed or evidenced by
15   note.
16                  It is Baupost/Abrams' position that
17   the term "indebtedness," as used in these two
18   Loan Agreements, is ambiguous, and that parol
19   evidence is permissible to clarify the
20   meaning of the term for purposes of showing
21   that claims held by affiliates, which
22   Baupost/Abrams calls "Intercompany Claims,"
23   were never intended to be included in the
24   universe of claims to benefit from
25   contractual subordination.
```

1              Proceedings

2              There are two facts I would like to

3    bring to the Court's attention, one of which

4    I think is just within the loan documents

5    themselves and the one that comes from

6    outside the loan documents.

7              The first is these two Loan

8    Agreements were executed between Enron and

9    its affiliate.  There was no indenture that

10   set forth the terms of who gets the benefit

11   from contractual subordination.  Unlike the

12   1987 Indenture and unlike the TOPRS

13   Indentures, this was a straight, inside loan

14   transaction.  So there is really no third

15   parties kind of vetting what is meant by

16   "Senior Indebtedness" for purposes of the two

17   Loan Agreements.

18             Then, as Your Honor would have seen

19   in our initial opening papers, the

20   prospectuses that went to accompany the MIPS

21   transactions, for which the two Loan

22   Agreements were integral to those two MIPS

23   transactions, stated that the amount of

24   Senior Indebtedness reported on a

25   consolidated basis was a certain number -- it

```
 1                    Proceedings
 2    was, I think, $3.2 billion -- as of 1993 or
 3    1994.  The key fact of the prospectuses is
 4    that for purposes of determining Senior
 5    Indebtedness, at least in this extrinsic
 6    document, it was reported on a consolidated
 7    basis.  So you would remove what would be
 8    true Intercompany Claims.  I don't think
 9    there is any dispute here that the
10    counterparties to the two Loan Agreements
11    were affiliates of Enron.  So we believe the
12    parol evidence will show that there was no
13    intent to include Intercompany Claims as the
14    type of claim that would benefit from
15    contractual subordination.
16              JUDGE GONZALEZ:  What difference
17    does that make?  If you have the documents
18    themselves indicating subordination, what
19    difference does it make whether you think the
20    perspective reflects an intention not to have
21    Intercompany Claims considered Senior
22    Indebtedness?
23              MR. WINSTON:  Your Honor's point is
24    well taken, assuming that the definition of
25    Senior Indebtedness in those two Loan
```

```
 1                    Proceedings
 2    Agreements is unambiguous.  As I opened this
 3    part of the presentation, the term
 4    "indebtedness" is not defined.  It is a term
 5    that is defined in other indentures, so it is
 6    one that is subject to more than one meaning.
 7    In this particular case with this particular
 8    type of definition in these two Loan
 9    Agreements, it is Baupost/Abrams' position
10    that there is no way to determine on the face
11    of the documents that that term is
12    unambiguous in including Intercompany Claims,
13    and so you go to parol evidence.
14              Now, it is possible -- I doubt
15    it -- but it is possible that the parties
16    that are seeking to include their claims will
17    be able to generate parol evidence to show
18    there was an intention, but that is for a
19    later day.  But for purposes of what is
20    before the Court now, if the Court determines
21    that term is ambiguous, we go to the next
22    step.  If the Court determines it is
23    unambiguous, then I guess I am done.  But I
24    think that term, certainly when you compare
25    it to the other indentures, is one which is
```