1                    Proceedings

2     simply a method of financing.  I think that

3     is something that has been lost in the

4     various arguments.  This is not a case where

5     you have individual obligations that are kind

6     of floating around.  What you have in place

7     is facilities Enron can draw on every time a

8     letter of credit is issued.  Even if the

9     letter of credit is not drawndown, it reduces

10    the credit limit, and there is no question

11    that Enron is directly obligated each time a

12    letter is issued and ultimately for a

13    drawdown.

14                    So in that context, Baupost

15    basically has made two arguments in their

16    1987 Indenture.  The first is somehow that

17    the letter of credit is not an instrument

18    under the 1987 definition of "Senior

19    Indebtedness."  We have cited, Your Honor,

20    the cases on that.  It is just wrong.  A

21    Reimbursement Agreement is a contract and it

22    is an instrument.  There is a Second Circuit

23    case that discusses that, the Red Rock case

24    cited at page 18 of our objection.  Letters

25    of credits are instruments and are routinely

```
 1                   Proceedings
 2   seen as such.  Those cases are cited at page
 3   19.  So I think that there is no intent in
 4   this definition to somehow limit "instrument"
 5   to negotiable instrument.  There is nothing
 6   that would indicate that in anyway, shape, or
 7   form.  An instrument is an instrument and
 8   these clearly are.
 9                   The argument that they press more
10   today and on reply deals with an exclusion to
11   the definition of indebtedness contained in
12   the 1987 Indenture.  I just want to look at
13   that briefly for a moment.  It is the
14   exclusion to the term of what indebtedness
15   is, where it excludes indirect guarantees or
16   other contingent obligations in connection
17   with the indebtedness of others.  Then it
18   gives some examples of what these kinds of
19   things would be:  agreements to purchase or
20   repurchase obligations of such other persons,
21   agreements to advance or supply funds to or
22   invest in such other persons, take-or-pay,
23   keep-well, make-whole, cash deficiency,
24   maintenance of working capital or earnings or
25   similar agreements.
```

1              Proceedings
2              A Reimbursement Agreement simply
3     doesn't fall within any of that class of
4     exclusion.  It is a direct obligation by
5     Enron to the Banks.  It is not guaranteeing
6     other third parties' performances.  It is in
7     no way other third parties' beneficiary.  It
8     is basically a financing tool used by Enron,
9     one to which their obligation to payback is
10    absolute, unconditional and irrevocable.
11             I just wanted to give one example,
12    which I think is helpful.  In essence, under
13    the reasoning that Baupost gives, a revolving
14    line of credit would be a contingent
15    obligation.  Because you have the same thing.
16    You have a line of credit of $1 billion
17    hypothetically, and at any point in time half
18    of it can be drawn down and half of it may
19    not be drawn down.  It may be used for third
20    party purposes or not.  It really doesn't
21    matter.  The fact of the matter is you have
22    got a commitment out there and the Banks have
23    to honor it, and if Enron draws on it, the
24    obligator then has to pay back.  So I think
25    clearly the letters of credit under the 1987

```
 1              Proceedings
 2  Indenture are Senior Indebtedness.
 3              Just briefly as to the TOPRS
 4  Indentures, again, TOPRS definition requires
 5  or deals with debt evidenced by notes, bonds,
 6  or other securities sold by the Company and
 7  capitalized leases, unless subordinated or
 8  unless a trade credit.  The letters of credit
 9  are clearly not trade credit.  By their
10  terms, they are not to be subordinated.  They
11  constitute a written promise to pay, which is
12  the equivalent of a bond, and clearly fall
13  within the scope of the definition of "Senior
14  Indebtedness."
15              So in conclusion, Your Honor, using
16  the plain meaning within the four corners of
17  these various contracts, it is I think
18  crystal clear these claim were all properly
19  classified by the Debtors as senior debt on
20  Amended Schedule S.
21              If Your Honor has no further
22  questions, I would respectfully ask that you
23  overrule the Objection.
24              MS. KRIEGER:  Good morning, Your
25  Honor.  Arlene Krieger from Stroock & Stroock
```

1               Proceedings

2    & Lavan on behalf of Bayerische Hypo-Und

3    Vereinsbank AG, which I will refer to as

4    "HVB" in this presentation.

5               Just to give a little bit of

6    background, prior to the Petition Date, Enron

7    and HVB entered into a Master Letter of

8    Credit and Reimbursement Agreement, which was

9    amended from time to time.  Pursuant to this

10   Reimbursement Agreement, Enron had the

11   ability to request and did request that HVB

12   issue a number of letters of credit to

13   support the performance of obligations of

14   Enron or its subsidiaries to various

15   third-party beneficiaries.  Like Chase, it is

16   a way of providing credit support, a kind of

17   financing tool.

18               Three of the letters of credit were

19   fully drawn prior to the Petition Date, and

20   HVB paid the respective beneficiaries of

21   those LLCs.  The result, Your Honor, is that

22   HVB advanced $81 million for the benefit of

23   Enron and has claims for that principal

24   amount, plus claims for outstanding fees and

25   other obligations under the Reimbursement

```
 1                    Proceedings
 2   Agreement.  One letter of credit in the
 3   principal amount of $32.5 million remains
 4   outstanding and, if drawn, would further
 5   increase the amount of HVB's claims against
 6   Enron in their Reimbursement Agreement.
 7              JUDGE GONZALEZ:  Speak louder,
 8   please.
 9              MS. KRIEGER:  Sorry, Your Honor.  I
10   will try.
11              Your Honor, as has been indicated,
12   the Schedule S initially, as put forward by
13   Enron, provided for Letter of Credit Claims,
14   claims arising from and relating to the
15   issuance of letters of credit to be entitled
16   to the subordination provisions of each of
17   the Subordination Agreements at issue.  Then
18   in the interim, between the time that they
19   filed their initial Schedule S and they filed
20   the Amended Schedule S, they had spent a
21   great deal of time, one assumes, looking
22   through that list and decided, again, that
23   Letter of Credit Claims or at least certain
24   Letter of Credit Claims, including HVB's
25   claims, were entitled to all of those
```

```
 1              Proceedings
 2  subordination benefits.  HVB will only
 3  address the Letter of Credit Claims.  It does
 4  not have any Intercompany Claim issues here.
 5              I will join with the arguments that
 6  have already been made and won't reiterate
 7  those by John Hancock and Chase with respect
 8  to the burden of proof that was argued by
 9  Baupost.  We think that that is not correct
10  and not supported.  This is a different
11  circumstance, and I would argue as well, Your
12  Honor, that the Best Products case that was
13  cited to by Baupost does not stand for that
14  proposition.  In fact, in that case there was
15  no disagreement or issue with respect to the
16  interpretation of the Subordination
17  Agreement.
18              Your Honor, we believe that we
19  belong on Schedule S.  When Baupost filed
20  their objection, obviously, we filed a
21  response challenging those issues.  They only
22  filed a pleading which challenged the HVB
23  claims with respect to the 1987 Indenture and
24  the TOPRS Indentures.  They did not challenge
25  the senior position of the HVB claims with
```

1                  Proceedings
2    respect to the 1993 Loan Agreement nor the
3    1994 Loan Agreement.
4                  With respect to the 1987 Indenture,
5    Your Honor, we disagree with Baupost's
6    arguments.  You have heard a lot of this
7    already, Your Honor, so forgive me.  But two
8    of the arguments that they make are:  that
9    the LLC claims are indirect guarantees or a
10   contingent obligation.  Our Reimbursement
11   Agreement, which was annexed to our pleading,
12   clearly reflects the fact that Enron's
13   indebtedness to HVB for the amount of any
14   draw on a letter of credit is direct and
15   unconditionally payable.  Again, there is no
16   contingency here.  Once the Bank issues a
17   letter of credit, the commitment is there.
18   There is no contingent obligation.  There is
19   an absolute obligation to pay.  The only
20   thing that is uncertain is what the amount
21   is, if any, that will have to be paid.
22                  Your Honor, if Enron's indebtedness
23   to HVB was contingent, for example, on XYZ
24   Corp. not satisfying a payment obligation to
25   HVB, in that instance Enron's obligation to

```
1                    Proceedings
2    HVB would be contingent.  But that is not the
3    circumstance that we have here.
4                    I would further join with Chase's
5    argument.  If you look at subsection (4) of
6    the indebtedness provision of the 1987
7    Indenture, there are specific types of
8    agreements which are indicated as being those
9    kinds of conditional obligations and
10   contingent guaranty circumstances and an
11   obligation under a reimbursement obligation
12   for repayment of amounts, which are drawn
13   under a letter of credit, just don't fit into
14   that scenario.
15                   So, Your Honor, we think that there
16   is no basis to find that HVB's claims fall
17   within the exclusion and, thereby, precludes
18   HVB from constituting indebtedness for
19   purposes of the Senior Indebtedness
20   definition.
21                   With respect to its being an
22   instrument, Your Honor, Baupost, as you have
23   heard, proffered other definitions and looked
24   to the UCC.  It looked to a commercial law
25   definition in Black's Law Dictionary.  While
```

1               Proceedings
2    those things just are not applicable, the
3    commercial law definition, Your Honor, is
4    applicable to UCC sale of goods situations.
5    That is not what we have here, again.  So
6    that is not of relevance.  Rather, the
7    Reimbursement Agreement is what Black's Law
8    says as its plain, ordinary meaning
9    definition of the word "instrument."  "A
10   written legal document that defines rights,
11   duties, entitlements or liabilities, such as
12   a contract."  The Reimbursement Agreement is
13   clearly a contract.
14           Your Honor, we think on the third
15   prong, although Baupost has not raised that
16   today, of what is required to meet the
17   "indebtedness" or "Senior Indebtedness"
18   definitions for the 1987 Indenture, is that
19   it is for the repayment of money borrowed.
20   We think that there is no argument here with
21   respect to that.  Obviously, letters of
22   credit are regarded as the functional
23   equivalent of loans.  When HVB issues the
24   LOCs, the loan commitment is made.  When LOCs
25   are drawn and HVB had to make payment, the

1              Proceedings

2    actual loan is issued, and Enron has an

3    absolute obligation under the terms of the

4    Reimbursement Agreement to repay that loan.

5              So in sum, Your Honor, we think

6    that the HVB claims under the 1987 Indenture

7    properly meet the definition of "Senior

8    Indebtedness."

9              We will further point out, not to

10   get into extrinsic evidence, but the

11   Reimbursement Agreement itself reflects in

12   the subordinated debt definition that is in

13   that agreement that Enron's obligations to

14   HVB are superior to Enron's obligations to

15   the Subordinated Debentures issued under the

16   1987 Indenture.

17             Moving to the TOPRS Indentures,

18   Your Honor, we also think quite clearly that

19   HVB meets the "Senior Indebtedness"

20   definitions here.  The key terms are that its

21   principal due, all indebtedness of Enron,

22   other than any obligations to trade creditors

23   evidenced by notes, debentures, and bonds,

24   unless in the case of any particular

25   indebtedness, it says it is subordinated to

```
 1                    Proceedings
 2   or is pari passu with the securities.
 3             Your Honor, we believe that the
 4   type of financial obligation created was
 5   intended to qualify as Senior Indebtedness
 6   under the TOPRS.  Black's Law Dictionary
 7   defines a bond to mean, in relevant part, an
 8   obligation, or promise, or a written promise
 9   to pay money if certain circumstances occur.
10   The Reimbursement Agreement squarely falls
11   within this definition, as that agreement
12   evidences Enron's written obligation to pay
13   money to HVB when a letter of credit is
14   drawn.
15             The TOPRS Indentures, the "Senior
16   Indebtedness" definition in that indenture,
17   specifically excludes, as I said,
18   indebtedness to trade creditors and
19   indebtedness for those financial obligations
20   where the instrument provides otherwise.  The
21   indebtedness created under the Reimbursement
22   Agreement is financial.  It is not trade
23   debt, and there are no provisions in the
24   Reimbursement Agreement either subordinating
25   such indebtedness to the TOPRS or stating
```

80

1                    Proceedings

2    that such indebtedness under the

3    Reimbursement Agreement is pari passu with

4    the TOPRS Debentures.

5                    We would also join with the

6    arguments that Chase made in connection with

7    distinguishing the "or other securities sold

8    by Enron for money borrowed" language.  We

9    don't think that that qualifies the term

10   "notes or bonds" and, therefore, is not at

11   issue here to disqualify HVB's Reimbursement

12   Agreement.

13                   We, therefore, argue, Your Honor,

14   and submit that HVB's claims constitute

15   Senior Indebtedness under the TOPRS

16   Indentures and are entitled to the benefits

17   of that indenture's contractual subordination

18   provisions.

19                   Your Honor, we don't believe that

20   we need to address the 1993 and 1994 Loan

21   Agreements, because Baupost has not put in

22   any Objection to those.  So we think that

23   those are properly on Schedule S as senior

24   debt.

25                   Thank you.

```
1                     Proceedings
2                 JUDGE GONZALEZ:  Is there anyone
3    else responding?
4                 All right.  Mr. Winston, you have
5    five minutes for your response.
6                 MR. WINSTON:  Thank you, Your
7    Honor.  I will try to keep it even shorter
8    than that.
9                 Unless Your Honor has an objection,
10   I am just going to go by indenture on the
11   open issues and just highlight some of the
12   flaws in the arguments that I have heard
13   today.
14                 With respect to the 1987 indenture,
15   the first open issue is what is meant by
16   "corporation," and counsel for JPMorgan cited
17   to what the indenture says.  But the
18   interesting thing is the definition of
19   "corporation" (1) uses the word "includes."
20   It doesn't say "it is limited to."  It uses
21   the word "includes," and it says
22   "corporations, voluntary associations, joint
23   stock companies, and business trusts."  So by
24   that term alone, it is already broader than
25   just a corporation and it uses the word
```

1                    Proceedings
2    "includes."
3              The next step from that is a
4    limited liability company.  So for purposes
5    of understanding what is meant by the term
6    "corporation," Enron Finance, a limited
7    liability company, should count.
8              The next question is the change in
9    voting control.  If I understand the argument
10   correctly, if voting control passes to a
11   third party of an Enron affiliate, for all
12   purposes in the future that affiliate does
13   not count as a Subsidiary for the 1987
14   Indenture.  So any time in the past, where
15   someone had voting control of that Enron
16   affiliate, and it was able to vote to put a
17   director on, it will never become a
18   Subsidiary, even though Enron may end up
19   having full voting control.  That makes no
20   sense.  If at some point voting control
21   passes back into the hands of Enron, it
22   should be counted as a Subsidiary for
23   purposes of that indenture.  That was the
24   intent of the exclusion, and I have heard
25   nothing to suggest otherwise.

1            Proceedings

2            Now, for Cherokee, it never

3    happened.  Cherokee always had a third party

4    controlling or having voting control of that

5    entity.  So I have no argument there.  But

6    with respect to EEC, which was not included

7    on Schedule S for the 1987 Indenture and for

8    purposes of Enron Finance, it should be the

9    same result.

10            With respect to the letter of

11    credit arguments on the 1987 Indenture, after

12    arguing that you should look to the entire

13    intent of the document or look at the entire

14    document, HVB and Chase want you to ignore

15    the actual language where it says "notes,

16    bonds, debentures, or other instruments."

17    They use a definition of "bond" taken from

18    Black's Law Dictionary, which does not have

19    any connection to the context of the

20    definition of Senior Indebtedness in the 1987

21    Indenture.  "Notes, bonds, debentures or

22    other instruments," doesn't include

23    contracts.  This is a contract to reimburse

24    an obligation owed to a third party.  If it

25    wanted to include contracts, it certainly

1                    Proceedings

2    could have said that.  But it is very limited

3    in what it is using.  So to suggest that just

4    because a contract may in certain

5    circumstances be called an "instrument" or

6    may be called a "bond," it is not what was

7    intended in this document based upon the

8    plain language of the document.  But even if

9    the Court disagrees with me, I don't

10   understand how the conditional obligation

11   exclusion doesn't apply here.

12            At the moment the Letter of Credit

13   Reimbursement Contract was executed, there

14   was a condition to it.  The condition is the

15   letter of credit has to be drawn.  Listening

16   to HVB's argument, she skipped over that

17   step, knowing that that is the flaw in the

18   argument.  The commission may never come to

19   pass.  The letter of credit may never have

20   been drawn, or it may be drawn only

21   partially, which I think is the case for some

22   of these letters of credit.  They may be

23   fully drawn.  But at the moment that

24   obligation is created, it is a conditional

25   obligation.  What else was intended by that

1                    Proceedings

2    provision?

3                    With respect to the TOPRS, with

4    respect to the Intercompany Claims, it turns

5    on what was meant by "sold by."  They have

6    argued that the "sold by Enron" applies only

7    to the term "securities."  That, again, is

8    taking the language out of context.  It says

9    "notes, bonds, debentures or other securities

10   sold by Enron."  The use of the term "other

11   securities" suggests, under the principles

12   that we have cited, that the "notes, bonds,

13   and debentures" are meant to be "other types

14   of securities" -- they just didn't say them

15   all -- and they have to be sold by Enron.

16   These weren't.  I agree.  This an atypical

17   indenture, but I have to go with what the

18   language says.  I am a little surprised at

19   it.  I also am surprised it wasn't an

20   expressed exclusion of Intercompany Claims,

21   like there was in the 1987 Indenture.  I

22   don't think most indentures have that, but

23   this one is atypical.  It still has to be

24   sold by Enron.  It has to be the type of

25   thing sold by Enron.  There were many

```
 1                  Proceedings
 2    obligations that were, in fact, sold by
 3    Enron, one of which we have conceded today,
 4    the Enron Equity Corporation Notes were, in
 5    fact, sold by Enron.
 6              Again, with respect to the Letter
 7    of Credit Claims, it does not make sense to
 8    even paint these things as "notes, bonds,
 9    debentures, or other securities." Under any
10    circumstances, a letter of credit is not a
11    security. That makes no sense whatsoever and
12    it clearly wasn't sold by Enron.
13              I can't understand why they used
14    this language in the TOPRS Indentures, but it
15    is not ambiguous. Therefore, as my opposing
16    counsel have already articulated, if the
17    language is unambiguous, you must follow it.
18              After saying that, I go to the 1993
19    and 1994 Loan Agreements. I still submit
20    that the term "indebtedness" is ambiguous as
21    used in that document. As we have already
22    seen in the two other indentures, the term
23    "indebtedness" is not universal for every
24    obligation Enron has. There are exclusions
25    to it.
```

```
1                    Proceedings
2              Now, unfortunately, the documents
3    that were executed between Enron and its
4    affiliate don't have any express exclusions
5    or express inclusions.  This Court can't
6    conclude that "all indebtedness" means
7    literally everything -- trade claims, to the
8    extent that someone could argue they
9    constitute money borrowed; the Intercompany
10   Claims; and even the Letter of Credit Claims,
11   because we have not objected to them, because
12   we didn't want to go through the brain damage
13   of trying to figure all of that stuff out.
14   But I have got to believe that, because that
15   term is subject to other interpretations, it
16   is possible that, as a counsel for Chase
17   argued, the holder of the obligation is what
18   matters.  They intended to exclude
19   Intercompany Claims.
20              I would submit to Your Honor that
21   under most indentures, Intercompany Claims
22   are excluded.  This one didn't expressly do
23   it.  I can see that point.  But that
24   provision or that term is subject to more
25   than one reasonable interpretation, and parol
```

```
 1                    Proceedings
 2   evidence will tell us what is really meant by
 3   it.
 4              That is all I have to say, Your
 5   Honor.
 6              JUDGE GONZALEZ:  All right.  Thank
 7   you.  I will take it under advisement.
 8              I am going to take a brief recess.
 9   Those of you who haven't given your
10   appearances for the balance of the calendar,
11   please do so.
12              (Whereupon, from 11:59 a.m. to
13   12:06 p.m. a recess was taken.)
14              JUDGE GONZALEZ:  Let me just check
15   what remains on the calendar.
16              All right.  Mr. Smith, you are here
17   on the various settlements?
18              MR. SMITH:  I am, Your Honor, on
19   two groups.  Thirteen uncontested 9019s and
20   the California settlement is on at 11:55 as
21   well.
22              JUDGE GONZALEZ:  All right.  Let's
23   skip that.  I apologize for those matters
24   that were skipped over, but if we are going
25   to get these Orders entered today, I need
```